John P. Barry
PROSKAUER ROSE LLP
One Newark Center
Newark, New Jersey 07102
Telephone: 973.274.6081
Facsimile: 973.274.3299
jbarry@proskauer.com

Richard M. Goldstein*
Lawrence I. Weinstein*
Michael T. Mervis*
Baldassare Vinti*
PROSKAUER ROSE LLP
1585 Broadway
New York, New York 10036
Telephone: 212.969.3000
Facsimile: 212.969.2900

**Pro hac vice* admission to be filed

*Attorneys for Plaintiff
Church & Dwight Co., Inc.*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| CHURCH & DWIGHT CO., INC.<br><br>    Plaintiff,<br><br>    v.<br><br>SPD SWISS PRECISION DIAGNOSTICS GMBH<br><br>    Defendant. | Civil Action No. _____<br><br>**COMPLAINT AND DEMAND FOR TRIAL BY JURY**<br><br>*DOCUMENT FILED ELECTRONICALLY* |

Plaintiff Church & Dwight Co., Inc. ("Church & Dwight"), by its attorneys and for its complaint against Defendant SPD Swiss Precision Diagnostics GmbH ("SPD"), states as follows:

## NATURE OF THE ACTION

1. This is an action against SPD for tortious interference with prospective economic advantage and violation of the New Jersey Consumer Fraud Act (N.J.S.A. § 56:8-1 *et seq.*).

## The Parties

2. Plaintiff Church & Dwight is a Delaware corporation with its principal place of business at 469 North Harrison Street, Princeton, New Jersey 08543.

3. Upon information and belief, Defendant SPD is a business entity organized and existing under the laws of Switzerland, and having its principal place of business at 47 route de Saint-Georges, 1213 Petit-Lancy, Geneva, Switzerland.

## Jurisdiction and Venue

4. This Court has subject matter jurisdiction over the claims asserted in this action pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000, exclusive of interest and costs, and the dispute is between a citizen of the states of New Jersey and Delaware on the one hand and a citizen of a foreign state on the other hand.

5. This Court has personal jurisdiction over SPD because SPD engages in continuous and systematic business activity in the State of New Jersey.

6. Venue is proper in this judicial district under 28 U.S.C. § 1391.

## FACTUAL ALLEGATIONS

7. Church & Dwight is in the business of researching, developing, marketing and distributing consumer products, including consumer pregnancy tests sold under the brands First Response® and Answer®. Church & Dwight's First Response and Answer tests are in vitro diagnostic devices intended for the early detection of pregnancy hormones by lay consumers.

8. Upon information and belief, SPD is a joint venture between two large companies, Inverness Medical Innovations, Inc. ("Inverness") and the consumer products giant The Procter &

Gamble Company ("P&G").  Upon information and belief, SPD, together with its principal, Inverness, control approximately 70% of the consumer pregnancy test market in the United States.

9.       Church & Dwight is SPD's main competitor in the consumer pregnancy test market. As described in greater below, SPD and Inverness have engaged in pattern of wrongful conduct directed toward Church & Dwight for the purpose of inhibiting and impairing its ability to compete in the consumer pregnancy test market and otherwise causing it injury.

**The FTC Charges Inverness with Illegally Acting**
**To Stifle Competition With Church & Dwight**

10.       In a press release dated December 23, 2008, the United States Federal Trade Commission ("FTC") announced that it had charged Inverness with acting illegally to stifle future competition in the U.S. market for consumer pregnancy tests, and of acting illegally to maintain its monopoly with respect to such products.  Among other things, the FTC's charges related to illegal conduct directed against Church & Dwight.

11.       The FTC press release also announced that instead of defending against the FTC's charges, Inverness had entered into an Agreement Containing Consent Order ("Consent Agreement") to settle those charges.  The Consent Agreement was designed, *inter alia*, to limit Inverness' ability to interfere with the future development and supply of competitive digital consumer pregnancy tests.  To that end, the Consent Agreement included numerous provisions designed to protect Church & Dwight from Inverness' monopolistic activities.

12.       The Consent Agreement was subject to a thirty-day public comment period, which expired on January 20, 2009.  Upon information and belief, immediately thereafter, SPD embarked on a campaign of wrongful and illegal conduct, which was intended to injure, and has had the effect of injuring Church & Dwight's ability to compete in the consumer pregnancy test market.

13.       On January 22, 2009, just two days after the thirty-day period for public comment on Inverness' settlement with the FTC ended, SPD sued Church & Dwight for alleged false advertising

3

in connection with its marketing of consumer pregnancy tests. Despite the fact that Inverness (SPD's 50% owner) had just agreed to a Consent Agreement with the FTC that was expressly intended to **promote** competition with Church & Dwight, SPD also moved for a preliminary injunction, claiming an "urgent" need for Church & Dwight to be ordered to remove its digital consumer pregnancy tests from store shelves, thereby effectively putting Church & Dwight out of the digital consumer pregnancy test business. SPD demanded such relief even though Church & Dwight's allegedly false advertising and packaging statements had been circulating publicly for nearly a year. Upon information and belief, SPD waited to commence its suit until immediately after Inverness finalized its settlement with the FTC because it realized that doing so earlier might jeopardize that settlement.

14. SPD's false advertising action and its motion for a preliminary injunction against Church & Dwight remain pending in the United States District Court for the District of New Jersey.

15. One of the protections afforded Church & Dwight under the FTC Consent Agreement, and in a subsequently-issued FTC Decision and Order that incorporated the final terms of the FTC's settlement with Inverness, was the requirement that Inverness amend an exclusive patent license with Bayer Healthcare LLC ("Bayer") concerning certain patents relating to digital pregnancy tests (the "Metrika Patents"). The amendment was designed to permit Church & Dwight the opportunity to license the Metrika Patents from Bayer, which would not have otherwise been possible under Inverness' exclusive license arrangement.

16. After the FTC Consent Agreement became final, Bayer and Church & Dwight began negotiating a license under the Metrika Patents, and a license agreement between them was entered into in late 2009. Upon information and belief, SPD and Inverness were aware of those negotiations and that a license agreement for the Metrika Patents was executed at the end of last year.

4

17. Within days after Church & Dwight entered into the license agreement with Bayer for the Metrika Patents, SPD and Inverness sued Church & Dwight on a different, two-year old patent, suddenly claiming that it is infringed by Church & Dwight's digital consumer pregnancy tests. The complaint by SPD and Inverness seeks to bar Church & Dwight from manufacturing and selling those products, which would provide SPD and Inverness with a virtual monopoly in the digital consumer pregnancy test market. In short, even though the FTC Consent Agreement required Inverness to "stand aside" and allow Church & Dwight the opportunity to take a license for one set of patents relating to digital pregnancy tests, as soon as that license was acquired, SPD and Inverness launched another attack on Church & Dwight's ability to market such products by claiming that they infringe another patent.

**SPD Wrongfully Interferes with the Publication of a Study by Consumers Union**

18. Upon information and belief, Consumers Union is a well-known, nonprofit testing and information organization that evaluates various consumer products, and reports the results of its evaluations to the consuming public. Consumers Union publishes *Consumer Reports* and maintains a website known as *ConsumerReports.org*. According to that website, *Consumer Reports* is one of the top-ten-circulation magazines in the country, and *ConsumerReports.org* has the most subscribers of any website of its kind. Upon information and belief, *Consumer Reports* and *ConsumerReports.org* have combined subscriptions of more than 8 million individuals.

19. In February 2003, *Consumer Reports* published a study conducted by Consumers Union entitled "When the test really counts," comparing the sensitivity of eighteen brands of consumer pregnancy tests, including the First Response pregnancy test kits sold by Church & Dwight and the ClearBlue® Easy pregnancy test kits then sold by Inverness and now sold by SPD ("2003 *Consumer Reports* Pregnancy Test Study").

20. The 2003 *Consumer Reports* Pregnancy Test Study concluded:

> For women who consider it important to test at the very first suspicion of pregnancy, our tests identified one especially sensitive and reliable brand, [Church & Dwight's] *First Response Early Result Pregnancy Test*. It will detect the very low levels of the hormone likely to be present in the earliest days of pregnancy.
>
> \* \* \* \*
>
> One product, *First Response Early Result Pregnancy Test*, emerged as the most reliable and sensitive test kit. It detected hCG at concentrations as low as 6.5 mIU/ml.
>
> \* \* \* \*
>
> As for your choice of product, we recommend the top-rated *First Response* test kit, which was both ultrasensitive and easy to read . . .
>
> \* \* \* \*
>
> A SUPERIOR CHOICE The First Response Early Result Pregnancy Test was both sensitive and reliable.

21. As would be expected, the 2003 *Consumer Reports* Pregnancy Test Study positively impacted Church & Dwight's First Response pregnancy tests in the marketplace and led to increased sales of those tests.

22. In or about mid-2008, Consumers Union informed Church & Dwight that it intended to publish another study comparing consumer pregnancy tests, including Church & Dwight's First Response and SPD's Clearblue Easy pregnancy tests (the "2009 *Consumer Reports* Pregnancy Test Study"). Consumers Union informed Church & Dwight that it would publish the results of this study online in May 2009 and in print in June 2009.

23. In connection with the 2009 *Consumer Reports* Pregnancy Test Study, Consumers Union requested detailed information about Church & Dwight's consumer pregnancy tests. Over the course of several months, Church & Dwight expended significant time and effort to comply with Consumers Union's requests for information.

6

24. Upon information and belief, Consumers Union conducted the 2009 *Consumer Reports* Pregnancy Test Study at the University of New Mexico using urine samples provided by Dr. Laurence Cole.

25. Dr. Cole is a highly credentialed scientist experienced in the area of pregnancy hormones and pregnancy tests. Indeed, upon information and belief, in or about mid-2008, SPD, through its then Chief Executive Officer (who is now employed by Inverness), sought to retain Dr. Cole as a consultant.

26. Upon information and belief, the 2009 *Consumer Reports* Pregnancy Test Study showed that the First Response pregnancy tests were more sensitive than the other consumer pregnancy tests tested by Consumers Union, including SPD's Clearblue Easy pregnancy tests.

27. Upon information and belief, SPD was aware of the 2003 *Consumer Reports* Pregnancy Test Study and the positive impact it had on sales of the First Response pregnancy tests.

28. Upon information and belief, at or about the time Consumers Union was conducting the 2009 *Consumer Reports* Pregnancy Test Study, SPD was aware that Consumers Union intended to publish the results of the 2009 *Consumer Reports* Pregnancy Test Study as it had with the 2003 *Consumer Reports* Pregnancy Test Study.

29. Upon information and belief, in or about 2009, in order to prevent Consumers Union from publishing a study that would be favorable to Church & Dwight, SPD made false and misleading representations to Consumers Union concerning Dr. Cole and the integrity, accuracy, and reliability of 2009 *Consumer Reports* Pregnancy Test Study, including falsely representing to Consumers Union that Dr. Cole was "dishonest" and that the results of the 2009 *Consumer Reports* Pregnancy Test Study were also "dishonest," flawed, and meaningless.

30. Consumers Union did not publish the 2009 *Consumer Reports* Pregnancy Test Study in May or June 2009, although it had previously informed Church & Dwight that it would do so.

31. Upon information and belief, Consumers Union has determined not to publish the 2009 *Consumer Reports* Pregnancy Test Study as a result of SPD's false and misleading statements concerning Dr. Cole and the 2009 *Consumer Reports* Pregnancy Test Study.

## FIRST COUNT
### Tortious Interference With Prospective Economic Advantage

32. Church & Dwight realleges and incorporates each and every allegation contained in paragraphs 1 through 31 as if fully set forth herein.

33. By reason of *Consumer Reports* and *ConsumerReports.Org.'s* prominence and influence on the consuming public, including their more than 8 million subscribers, as well as the superiority, sensitivity and accuracy of Church & Dwight's First Response pregnancy tests and the positive impact of the favorable 2003 *Consumer Reports* Pregnancy Test Study, among other things, Church & Dwight had a reasonable expectation of obtaining an economic benefit and advantage from the 2009 *Consumer Reports* Pregnancy Test Study, including a reasonable expectation of increased goodwill, market share, shelf space, and sales of the First Response pregnancy tests.

34. Upon information and belief, SPD knew of Church & Dwight's reasonable expectation of economic benefit and advantage resulting from the anticipated release of the 2009 *Consumer Reports* Pregnancy Test Study.

35. Upon information and belief, SPD wrongly and intentionally interfered with Church & Dwight's expectation of economic benefit and advantage through its false and misleading representations to Consumers Union concerning Dr. Cole and the 2009 *Consumer Reports* Pregnancy Test Study.

36. But for SPD's wrongful conduct, as aforestated, Church & Dwight would have realized the economic benefit and advantage of, *inter alia*, increased goodwill, market presence, shelf space, and sales of the First Response pregnancy tests.

37. As a direct and proximate result of SPD's tortious and illegal conduct with respect to

Consumers Union and the 2009 *Consumer Reports* Pregnancy Test Study, Church & Dwight was injured by losing the increased goodwill, market share, shelf space, and sales of the First Response pregnancy tests that would have resulted from the publication of the 2009 *Consumer Reports* Pregnancy Test Study.

## SECOND COUNT
### Violation of the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1, *et.seq.*

38.     Church & Dwight realleges and incorporates each and every allegation contained in paragraphs 1 through 37 as if fully set forth herein.

39.     SPD's foregoing acts constitute an unconscionable commercial practice, deception, fraud, false pretense, misrepresentation or knowing concealment, suppression or omission of a material fact with intent that others rely upon such concealment, suppression or omission in connection with the sale or advertisement of pregnancy tests or the performance of services concerning pregnancy tests and a violation of the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1, *et seq.*

40.     SPD's wrongful conduct has injured Church & Dwight in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Church & Dwight prays that:

a.      Judgment be entered for Church & Dwight on its claims;

b.      SPD be required to account for and relinquish to Church & Dwight all direct and indirect gains, profits, and advantages derived from SPD's wrongful acts as described above;

c.      SPD be required to pay Church & Dwight such damages as Church & Dwight has sustained as a consequence of SPD's wrongful acts complained of herein;

d.      Church & Dwight be awarded the available damages in an amount to be determined at trial;

  e. Church & Dwight be awarded punitive damages in such amount as may be determined at trial;

  f. The aforesaid amounts be trebled or otherwise enhanced as authorized by law;

  g. Church & Dwight be awarded prejudgment interest according to the law;

  h. SPD be required to pay Church & Dwight the costs of this action and Church & Dwight's reasonable attorneys' fees; and

  i. Church & Dwight be provided such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiff Church & Dwight Co., Inc. demands a trial by jury on all issues so triable.

Dated: January 25, 2010

  /s/John P. Barry
  John P. Barry
  PROSKAUER ROSE LLP
  One Newark Center
  Newark, New Jersey 07102
  Tel: 973.274.6081
  Fax: 973.274.3299
  jbarry@proskauer.com

  Richard M. Goldstein*
  Lawrence I. Weinstein*
  Michael T. Mervis*
  Baldassare Vinti*
  PROSKAUER ROSE LLP
  1585 Broadway
  New York, New York 10036
  Telephone: 212.969.3000
  Facsimile: 212.969.2900

  **Pro hac vice* admission to be filed

  *Attorneys for Plaintiff*
  *Church & Dwight Co., Inc.*