John P. Barry
PROSKAUER ROSE LLP
One Newark Center
Newark, New Jersey 07102
Telephone: 973.274.6081
Facsimile: 973.274.3299
jbarry@proskauer.com

Richard M. Goldstein*
Michael T. Mervis*
Baldassare Vinti*
PROSKAUER ROSE LLP
1585 Broadway
New York, New York 10036
Telephone: 212.969.3000

*Admitted *pro hac vice*

*Attorneys for Plaintiff*
*Church & Dwight Co., Inc.*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| CHURCH & DWIGHT CO., INC., | ) |
| Plaintiff, | ) Civil Action No. 3:10-CV-00453 (JAP) (TJB) |
| v. | ) Return Date:  June 7, 2010 |
| SPD SWISS PRECISION DIAGNOSTICS GMBH, | ) |
| Defendant. | ) ORAL ARGUMENT REQUESTED |

# CHURCH & DWIGHT CO., INC.'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT SPD SWISS PRECISION DIAGNOSTICS GMBH'S MOTION TO DISMISS

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ........................................................................... 1

STATEMENT OF FACTS ................................................................................. 3

ARGUMENT .................................................................................................. 7

I.    APPLICABLE LEGAL STANDARD ............................................................ 7

II.   THE COMPLAINT STATES CLAIMS FOR RELIEF FOR TORTIOUS
      INTERFERENCE AND VIOLATION OF THE CFA THAT ARE PLAUSIBLE
      ON THEIR FACE ................................................................................. 8

      A.    The Complaint States A Claim For Tortious Interference With Prospective
            Economic Advantage ................................................................. 10

            1.    The Complaint Sufficiently Pleads Church & Dwight's Reasonable
                  Expectation Of Economic Benefit Or Advantage ..................... 10

            2.    The Complaint Sufficiently Pleads That SPD Knew Of Church &
                  Dwight's Expectation Of Economic Benefit Or Advantage .......... 15

            3.    The Complaint Sufficiently Pleads SPD's Wrongful, Intentional
                  Interference With Church & Dwight's Expectation Of Economic
                  Benefit .............................................................................. 17

            4.    The Complaint Sufficiently Pleads That In The Absence Of SPD's
                  Interference, There Was A Reasonable Probability That Church &
                  Dwight Would Have Received The Anticipated Economic Benefit
                  From The 2009 Consumer Reports Study .............................. 19

      B.    The Complaint States A Claim Under New Jersey's Consumer Fraud Act ......... 21

            1.    SPD's Own Pleadings Before This Court Belie Its Assertion That
                  Church & Dwight Has No Standing Under The CFA ................... 21

            2.    Church & Dwight Has Standing Under The CFA ...................... 22

            3.    The Complaint Alleges Sufficient Facts To State A Plausible
                  Claim Under The CFA ......................................................... 24

      C.    In The Event That The Court Determines That The Allegations Of The
            Complaint Are Insufficient, Leave To Amend Should Be Granted ..................... 25

CONCLUSION ............................................................................................. 25

i

## Table of Authorities

**Page(s)**

CASES

*800-JR Cigar, Inc. v. GoTo.com, Inc.*,
   437 F. Supp. 2d 273 (D.N.J. 2006) .................................................................. 22

*Advanced Power Sys., Inc. v. Hi-Tech Sys., Inc.*,
   801 F. Supp. 1450 (E.D. Pa. 1992) .................................................................. 15

*Alvord-Polk, Inc. v. F. Schumacher & Co.*,
   37 F.3d 996 (3d Cir. 1994) .............................................................................. 15

*Am. Health Sys. v. Visiting Nurse Assoc. of Greater Philadelphia*,
   1994 WL 314313 (E.D. Pa. June 29, 1994) ...................................................... 13

*Ashcroft v. Iqbal*,
   129 S.Ct. 1937 (2009) ............................................................................... passim

*Arroyo v. Arnold-Baker & Assoc., Inc.*,
   206 N.J. Super. 294 (N.J. Super. Ct. 1985) ..................................................... 23

*Barr Lab. v. Bolar Pharm.*,
   1992 U.S. Dist. LEXIS 22883 (D.N.J. 1992) ................................................... 22

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ............................................................................... 2, 7, 8

*Boykin v. Keycorp*,
   521 F.3d 202 (2d Cir. 2008) .............................................................................. 8

*Burns Jackson Miller Summit & Spitzer v. Lindner*,
   452 N.Y.S. 2d 80, 83, 93 (N.Y. App. Div. 1982) ............................................ 15

*Chambers v. Beard*,
   2009 WL 2191748 (M.D. Pa. July 22, 2009) ..................................................... 9

*City Check Cashing, Inc. v. Nat'l State Bank*,
   244 N.J. Super. 304 (N.J. Super. Ct. App. Div. 1990) ...................................... 23

*Conte Bros. Auto., Inc. v. Quaker State-Slick 50, Inc.*,
   992 F. Supp. 709 (D.N.J. 1998) ....................................................................... 23

*Cushman & Wakefield of N.J. v. Alexander Summer Co.*,
   295 N.J. Super. 173 (N.J. Sup. Ct. App. Div. 1996) ................................... 17, 18

*Del Tufo v. Nat'l Republican Senatorial Comm.*,
   248 N.J. Super. 684 (Sup. Ct. N.J. 1991) ........................................................ 23

*Di Cristofaro v. Laurel Grove Mem. Park*,
    43 N.J. Super. 244 (N.J. Sup. Ct. App. Div. 1957) ................................................. 13

*E\*Trade Sav. Bank v. Nat'l Settlement Agency, Inc.*,
    2008 WL 2902576 (S.D.N.Y. July 25, 2008) ........................................................ 9

*Eli Lilly and Co. v. Roussel Corp.*,
    23 F. Supp. 2d 460 (D.N.J. 1998) ................................................................. 13, 14

*EZ Sockets, Inc. v. Brighton-Best Socket Screw Mfg. Inc.*,
    307 N.J. Super. 546 (N.J. Super. Ct. Ch. Div. 1996) ........................................... 17

*Felier v. N.J. Dental Assoc.*,
    191 N.J. Super. 426 (N.J. Super. Ct. 1983) ........................................................ 23

*Floorgraphics, Inc. v. News Am. Mktg. In-Store Serv., Inc.*,
    2006 WL 2846268 (D.N.J. Sept. 29, 2006) ........................................................ 13

*Foman v. Davis*,
    371 U.S. 178 (1962) ....................................................................................... 25

*Garshman v. Universal Res. Holding Inc.*,
    824 F.2d 223, 233 (3d Cir. 1987) .................................................................... 15

*Gen. Dev. Corp. v. Binstein*,
    743 F. Supp. 1115 (D.N.J. 1990) .................................................................... 23

*GlaxoSmithkline Consumer Healthcare, L.P. v. Merix Pharm. Corp.*,
    2006 WL 1792856 (3d Cir. June 29, 2006) ........................................................ 23

*Graco, Inc. v. PMC Global, Inc.*,
    2009 WL 904010 (D.N.J. March 31, 2009) (Wolfson, J.) ..................................... 12

*HPD Lab. v. Clorox Co.*,
    202 F.R.D. 410 (D.N.J. 2001) ....................................................................... 23

*In re Burlington Coat Factory Securities Litigation*,
    114 F.3d 1410 (3d Cir. 1997) ..................................................................... 9, 20

*Korea Supply Co. v. Lockheed Martin Corp.*,
    29 Cal. 4th 1134 (Cal. 2003) ........................................................................ 15

*Kost v. Kosakiewicz*,
    1 F.3d 176 (3d Cir. 1993) ............................................................................. 18

*Monarch Life Ins. Co. v. Senior*,
    2006 WL 3825138 (D.N.J. Dec. 22, 2006) ....................................................... 24

*Neveroski v. Blair*,
    141 N.J. Super. 365 (N.J. Super. Ct. App. Div. 1976) ......................................... 23

*Phillips v. County of Allegheny*,
  515 F.3d 224 (3d Cir. 2008) ................................................................... 7

*Prima v. Darden Rest., Inc.*,
  78 F. Supp. 2d 337 (D.N.J. 2000) .......................................................... 16

*Printing Mart-Morristown v. Sharp Elec. Corp.*,
  116 N.J. 739 (N.J. 1989) .......................................................... 13, 17, 19

*Riley v. New Rapids Carpet Center*,
  61 N.J. 218 (N.J. 1972) ........................................................................ 23

*Roth v. Rhodes*,
  25 Cal. App. 4th 530, 546 (Cal. Ct. App. 1994) ................................... 15

*S. Camden Citizens in Action v. N.J. Dep't of Envtl. Prot.*,
  254 F. Supp. 2d 486 (D.N.J. 2003) ..................................................... 9, 20

*San Pellegrino S.P.A. v. Aggressive P'ship, Inc.*,
  2009 WL 2448504 (D.N.J. Aug. 10, 2009) ............................................. 8

*Shinn v. Champion Mortgage Co., Inc.*,
  2010 WL 500410 (D.N.J. Feb. 5, 2010) ................................................. 11

*Slim CD, Inc. v. Heartland Payment Sys., Inc.*,
  2007 WL 2459349 (D.N.J. Aug. 24, 2007) ................................. 11, 12, 13

*Specialty Ins. Agency v. Walter Kaye Assoc. Inc.*,
  1989 WL 120752 (D.N.J. Oct. 2, 1989) ................................................. 22

*State v. Hudson Furniture Co.*,
  165 N.J. Super. 516 (N.J. Sup. Ct. App. Div. 1979) .............................. 24

*Syncsort Inc. v. Innovative Routines Int'l, Inc.*,
  2005 WL 1076043 (D.N.J. May 6, 2005) .......................................... 13, 19

*Teva Pharm. Indus., Ltd. v. Apotex, Inc.*,
  2008 WL 3413862 (D.N.J. Aug. 8, 2008) ............................................... 12

*Tr. of the Auto. Mech. Indus. Welfare and Pension Funds Local v. Elmhurst Lincoln
  Mercury*,
  2010 WL 46398 (N.D. Ill. Jan. 7, 2010) ................................................. 9

*Trans USA Prod., Inc. v. Howard Berger Co., Inc.*,
  2008 WL 3154753 (D.N.J. Aug. 4, 2008) ............................................... 22

*WHY ASAP, LLC v. Compact Power*,
  461 F. Supp. 2d 308 (D.N.J. 2006) ........................................................ 25

**STATUTES**

N.J.S.A. 56:8-1, *et seq.*..................................................................................................... 22, 24

**OTHER AUTHORITIES**

Fed. R. Civ. P. 8(a)(2) ......................................................................................................... 7

Fed. R. Civ. P. 9(b)............................................................................................................. 23

Fed. R. Civ. P. 15(a)........................................................................................................... 25

**PRELIMINARY STATEMENT**

The wrongdoing by defendant Swiss Precision Diagnostics GmbH ("SPD") alleged in the Complaint is clear and malicious. As part of an ongoing scheme perpetrated by SPD and its 50% owner (Inverness Medical Innovations, Inc. ("Inverness")) to injure plaintiff Church & Dwight Co., Inc. ("Church & Dwight"), SPD's main competitor in the US consumer pregnancy test kit market, SPD lied to the publisher of *Consumer Reports* about the integrity of a well-credentialed scientist. SPD did this for the sole purpose of preventing the publication of a report of a study that would have recommended the products of Church & Dwight over SPD's products and would have led directly to increased sales of Church & Dwight's products, as well as other marketplace benefits.

SPD has moved to dismiss Church & Dwight's two claims for relief, for tortious interference with prospective economic advantage and violation of the New Jersey Consumer Fraud Act ("CFA"). The motion fails because it ignores or misstates what is actually alleged in the Complaint and ignores the common sense inferences that *must* be drawn from the factual allegations.

Indeed, the factual allegations of the Complaint supporting Church & Dwight's claim for tortious interference with prospective economic advantage go well beyond the pleading requirements of Rule 8 of the Federal Rules of Civil Procedure ("Rule 8") as interpreted by the Supreme Court in *Iqbal* and *Twombly*. They include: that SPD made false and misleading representations to Consumers Union to prevent Consumers Union from publishing a report of a 2009 study recommending Church & Dwight's pregnancy tests; the time frame in which those misrepresentations were made; that SPD knew its statements were false; that Consumers Union did not publish the report because of SPD's wrongful, intentional misrepresentations; that Church & Dwight had a reasonable expectation of economic benefit from Consumers Union's publication of the report based on the actual economic benefit Church & Dwight received from the publication of

1

a report of a similar study in 2003 and based on the wide subscribership of *Consumer Reports* and its website; that SPD had knowledge of this expectancy; and the economic harm suffered by Church & Dwight.  These specific factual allegations go much further than the law requires to state a claim. Indeed, they render absurd SPD's argument that the Complaint fails to state a claim for tortious interference that is plausible on its face.

In fact, the Court need look no further than SPD's principal argument for dismissal of the CFA claim in order to fully appreciate how untrustworthy SPD's arguments are.  Specifically, SPD asserts that Church & Dwight has no standing to bring suit under the CFA because the "statute protects consumers, not market participants."  (SPD Br. at 1.)  Remarkably, SPD says this notwithstanding that in a related case before the Court, 3:10-CV-00276 (FLW) (TJB), SPD filed a Counterclaim in which it alleged that *Church & Dwight was liable to SPD under the CFA based on injury to SPD as a competitor*.  Obviously, if the law regarding the standing of a competitor were really as SPD argues it in its motion to dismiss (which is not the case), SPD could not have filed its Counterclaim in the related case in compliance with Rule 11.

In order to succeed on a motion to dismiss, SPD must demonstrate that the factual allegations of the Complaint – which at the pleading stage must be accepted as true and construed in the light most favorable to the Church & Dwight – do not place SPD on "notice" of Church & Dwight's claims for tortious interference and violation of the CFA.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (stating that Rule 8 requires a complaint "to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests . . . .'") (citation omitted).  As shown below, SPD cannot meet this burden in the face of the detailed factual allegations of Church & Dwight's Complaint.  Its motion to dismiss should be denied.

### STATEMENT OF FACTS

Church & Dwight develops, markets and distributes, among other things, consumer pregnancy tests, including under the First Response® brand.  ( Compl. ¶ 7.)  SPD markets competing products, including products sold under the ClearBlue® Easy brand.  (*Id.* ¶¶ 8-9, 19.)

As alleged in the Complaint, SPD and Inverness have engaged in a pattern of wrongful conduct directed towards Church & Dwight for the purpose of inhibiting and impairing its ability to compete in the consumer pregnancy test market and to otherwise cause it injury.  (*Id.* ¶ 9.)  This is not just Church & Dwight's view, but also the conclusion of the Federal Trade Commission ("FTC"), which in December 2008 announced that it had charged Inverness with acting illegally to stifle future competition in the US market for consumer pregnancy tests and of acting illegally to maintain its monopoly with respect to such products.  Theses charges included illegal conduct directed against Church & Dwight in the consumer pregnancy test market.  (*Id.*)  Rather than defend against the charges, Inverness opted to settle with the FTC.

Immediately after Inverness settled with the FTC, SPD and Inverness embarked on a strategy of using litigation to impose expense and burden on Church & Dwight and to bar Church & Dwight from selling its consumer pregnancy tests.  (*Id.* ¶¶ 13-17.)  On January 22, 2009, within two days after the public comment period for Inverness' settlement with the FTC ended, SPD sued Church & Dwight for alleged false advertising in connection with its marketing of consumer pregnancy tests.  (*Id.* ¶ 13.)  Despite the fact that the settlement Inverness entered into with the FTC was expressly intended to promote competition with Church & Dwight, SPD also moved for a preliminary injunction, claiming an "urgent" need for Church & Dwight to be ordered to remove its digital consumer pregnancy tests from store shelves, thereby effectively putting Church & Dwight out of the digital consumer pregnancy test business.  (*Id.*)  SPD demanded such relief even though Church & Dwight's allegedly false advertising and packaging statements had been circulating

3

publicly for nearly a year. (*Id.*) SPD waited to commence its suit until immediately after Inverness finalized its settlement with the FTC because it realized that doing so earlier might jeopardize that settlement. (*Id.*)

Inverness' settlement with the FTC also required Inverness to amend its exclusive license with Bayer Healthcare LLC ("Bayer"), the owner of certain patents relating to digital pregnancy tests, to allow Church & Dwight to license those patents. (*Id.* ¶¶ 14-16.) However, even though the FTC settlement required Inverness to "stand aside" and allow Church & Dwight the opportunity to take a license to the Bayer patents, within days of Church & Dwight acquiring rights to those patents, Inverness and SPD sued Church & Dwight on a different, two-year old patent, suddenly claiming that it is infringed by Church & Dwight's digital consumer pregnancy tests. (*Id.* ¶ 17.) The patent complaint by SPD and Inverness seeks to bar Church & Dwight from manufacturing and selling those products, which would provide SPD and Inverness with a virtual monopoly in the digital consumer pregnancy test market. (*Id.* ¶ 17.)

As is alleged in the Complaint, SPD complemented its post-FTC settlement litigation campaign against Church & Dwight with false and misleading representations to Consumers Union that, as was intended by SPD, resulted in economic injury to Church & Dwight. (*Id.* ¶¶ 29, 35-36.) Consumers Union is a highly-influential, nonprofit testing and information organization that evaluates and recommends consumer products to the public by way of its *Consumer Reports* magazine and *ConsumerReports.org* website. (*Id.* ¶ 18.) Over 8 million people subscribe to the *Consumer Reports* magazine and website and rely on the recommendations and information contained therein when making purchasing decisions. (*Id.*) A favorable recommendation by *Consumer Reports* confers a tremendously positive effect on a product's reputation, goodwill and sales. (*Id.* ¶ 21.)

In February 2003, *Consumer Reports* published a report of an impartial, independent study

conducted by Consumers Union entitled "When the test really counts." (*Id*. ¶ 19.) The report recommended Church & Dwight's First Response® pregnancy test over all other pregnancy tests, including the Clearblue® Easy product now sold by SPD. (*Id*. ¶¶ 19-20.) *Consumer Reports* made its recommendation because the testing showed that the First Response pregnancy test was the most sensitive and reliable. (*Id*.) This recommendation led to a direct increase in sales of the First Response test, as well as increased goodwill, market share, and shelf space for the First Response test. (*Id*. ¶ 21.)

In 2008, Consumers Union informed Church & Dwight that it would conduct another study comparing the First Response and ClearBlue Easy pregnancy tests, among others. (*Id*. ¶ 22.) Consumers Union advised Church & Dwight that a report of the study results would be published in *Consumer Reports* online in May 2009 and in print in June 2009. (*Id*.) Cognizant of the importance of such a study and the economic impact that favorable results would have in the marketplace, Church & Dwight expended significant time, resources and effort to provide Consumers Union with the product information that it requested. (*Id*. ¶ 23.)

Consumers Union conducted the 2009 *Consumer Reports* study at the University of New Mexico, using test samples provided by Dr. Laurence Cole, a highly credentialed scientist experienced in the area of pregnancy hormones and pregnancy tests. (*Id*. ¶¶ 24-25). As with the 2003 *Consumer Reports* study, the 2009 *Consumer Reports* study showed that the First Response pregnancy test was more sensitive than any other consumer pregnancy test evaluated and tested by Consumers Union, including SPD's ClearBlue Easy pregnancy test. (*Id*. ¶ 25.)

In its brief, SPD asserts that Church & Dwight, not Consumers Union, commissioned the 2009 *Consumer Reports* study at the University of New Mexico to obtain favorable publicity from Consumer Reports. (SPD Br. at n. 2.) This assertion is false. Consumers Union, not Church & Dwight, commissioned and conducted the 2009 *Consumer Reports* study. (*Id*. ¶¶ 22-25.) The

clinical study that Church & Dwight submitted in opposition to SPD's motion for preliminary injunction, which Church & Dwight commissioned Dr. Cole to conduct, is a completely different study than the 2009 *Consumer Reports* study.  The point, however, is that SPD's (false) assertion about the Consumers Union study illustrates that its motion to dismiss is not really about attacking the sufficiency of the Complaint, but rather an improper attempt by SPD to dispute the merits of Church & Dwight's factual contentions by arguing, falsely, that the Consumers Union's study was not impartial.

The Complaint alleges that after SPD became aware of this 2009 *Consumer Reports* study, and in an effort to prevent Consumers Union from publishing the results of yet another study favorable to Church & Dwight, SPD made false and misleading representations to Consumers Union concerning Dr. Cole's integrity and the accuracy and reliability of the 2009 *Consumer Reports* study.  (Compl. ¶ 29.)  Those false representations included the accusations that Dr. Cole was "dishonest" and that the results of the 2009 *Consumer Reports* study were therefore also "dishonest" and otherwise flawed and meaningless.  (*Id.*)

The Complaint further makes clear that SPD's false and misleading statements about Dr. Cole and the 2009 *Consumer Reports* study caused Consumers Union to not publish the results of the 2009 *Consumer Reports* study as it previously intended.  (Compl. ¶¶ 30, 31.)  This deprived Church & Dwight of the economic advantage and benefit associated with the publication of a favorable *Consumer Reports* study, including the increased sales and positive market impact that Church & Dwight previously obtained from the similar 2003 *Consumer Reports* study.  (*Id.* ¶ 31.)

Based on SPD's wrongful conduct, Church & Dwight asserts claims against SPD for tortious interference with prospective economic advantage and violation of the CFA.

# ARGUMENT

## I.    APPLICABLE LEGAL STANDARD

A claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). It is well settled that in reviewing a motion to dismiss, a court must accept a plaintiff's allegations as true and construe them in the light most favorable to the plaintiff. *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008). The court must then determine whether under any reasonable reading of the complaint, the plaintiff may be entitled to relief. *Id.* Importantly, the Supreme Court has made clear that a complaint need not contain detailed factual allegations; rather, it must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). Plausibility "does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence" of the alleged misconduct. *Twombly*, 550 U.S. at 556. Thus, "a district court weighing a motion to dismiss asks 'not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.'" *Id.* at 563 n.8 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the *reasonable inference* that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S.Ct. at 1949 (emphasis added). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 1950.

II.     **THE COMPLAINT STATES CLAIMS FOR RELIEF FOR TORTIOUS INTERFERENCE AND VIOLATION OF THE CFA THAT ARE PLAUSIBLE ON THEIR FACE**

Rule 8, as interpreted by the Supreme Court, requires that the Complaint "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests . . . .'" *Twombly*, 550 U.S. at 555 (citation omitted).  Here, the Complaint gives SPD not just "fair" but detailed notice that Church & Dwight is pursuing claims for tortious interference with prospective economic advantage and violations of the CFA based on SPD's intentionally false and misleading representations to Consumers Union for the purpose of preventing the publication of a report of a study that would have recommended Church & Dwight's products over those sold by SPD.  The Complaint specifically lays out the factual bases for Church & Dwight's claims for relief, including the intentional misrepresentations that SPD made, the time frame when SPD made those misrepresentations, why SPD made those misrepresentations, Church & Dwight's reasonable expectation of economic benefit from the publication of Consumers Union's recommendation – an economic benefit that Church & Dwight actually received from a prior recommendation by Consumers Union – and the economic damage that directly resulted from SPD's wrongful acts.  At a minimum, these factual allegations "allow[] the court to draw the *reasonable inference* that [SPD] is liable for the misconduct alleged." *Iqbal*, 129 S.Ct. at 1949 (emphasis added).

Contrary to SPD's assertion, the fact that some allegations are pled on "information and belief" does not make them speculative or allow SPD to challenge the merits of those allegations at the pleading stage.  In fact, courts routinely find pleadings based on information and belief sufficient to overcome a motion to dismiss.  *See, e.g.*, *San Pellegrino S.P.A. v. Aggressive P'ship, Inc.*, 2009 WL 2448504 at *4 (D.N.J. Aug. 10, 2009) (unpublished) (denying motion to dismiss and finding that complaint met *Twombly's* standard when the plaintiff's pleadings were based on information and belief); *see also Boykin v. Keycorp*, 521 F.3d 202, 215 (2d Cir. 2008) ("[p]leading

on the basis of information and belief is generally appropriate" when pertinent information is within the defendant's knowledge and control); *Tr. of the Auto. Mech. Indus. Welfare and Pension Funds Local v. Elmhurst Lincoln Mercury*, 2010 WL 46398, at *1 (N.D. Ill. Jan. 7, 2010) (listing cases that "have routinely rejected" defendants' argument that allegations based on information and belief cannot survive a motion to dismiss under *Iqbal*); *Chambers v. Beard*, 2009 WL 2191748, at *26 n.7 (M.D. Pa. July 22, 2009) (noting that under *Twombly*, "plaintiffs, through their attorneys, may make good faith factual allegations based on information and belief"); *E*Trade Sav. Bank v. Nat'l Settlement Agency, Inc.*, 2008 WL 2902576, at *1 n. 1 (S.D.N.Y. July 25, 2008) (same).

Rather than accepting Church & Dwight's factual allegations as true, as the law requires at the pleading stage, SPD blithely argues that the factual allegations of the Complaint "consist of virtually nothing other than speculation – a fact effectively acknowledged by C&D when it framed all of its operative allegations as based on unarticulated 'information and belief.'"  (SPD Br. at 5.) Therefore, it is clear that SPD is not actually contesting the sufficiency of the factual allegations of the Complaint; rather, it is disputing the veracity and merits of those allegations and whether Church & Dwight will ultimately prevail.  Needless to say, that is not the proper purpose of a motion to dismiss.  *See In re Burlington Coat Factory Securities Litigation*, 114 F.3d 1410, 1420 (3d Cir. 1997) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)) ("[t]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.");  *S. Camden Citizens in Action v. N.J. Dep't of Envtl. Prot.*, 254 F. Supp. 2d 486, 499 (D.N.J. 2003) (stating that it was "inappropriate at [the pleadings] stage of these proceedings to argue the merits of the case . . . . [defendants] will have the opportunity to present supporting evidence to this Court in a motion for summary judgment, or ultimately at trial.").

Indeed, SPD can no more base its motion to dismiss on the fact that various allegation in the Complaint are made on information and belief than Church & Dwight can cross-move for summary

judgment simply because SPD has (tellingly) not denied them.[1]

> **A.     The Complaint States A Claim For Tortious Interference With Prospective Economic Advantage**

As acknowledged by SPD, the required elements of a claim for tortious interference with prospective economic advantage are "(1) a plaintiff's reasonable expectation of economic benefit or advantage, (2) the defendant's knowledge of that expectancy, (3) the defendant's wrongful, intentional interference with that expectancy, (4) in the absence of interference, the reasonable probability that the plaintiff would have received the anticipated economic benefit, and (5) damages resulting from defendant's interference."  (SPD Br. at 5 (quoting *Fineman v. Armstrong World Indus., Inc.*, 980 F.2d 171, 195 (3d Cir. 1992).)  SPD contends that Church & Dwight "fails to allege facts that establish *any* of these elements" for tortious interference with prospective economic advantage.  (SPD Br. at 6 (emphasis in original).)  The Complaint reveals otherwise.

> **1.     The Complaint Sufficiently Pleads Church & Dwight's Reasonable Expectation Of Economic Benefit Or Advantage**

Paragraph 33 of the Complaint alleges:

> 33.     By reason of *Consumer Reports* and *ConsumerReports.Org.'s* prominence and influence on the consuming public, including their more than 8 million subscribers, as well as the superiority, sensitivity and accuracy of Church & Dwight's First Response pregnancy tests and the positive impact of the favorable 2003 *Consumer Reports* Pregnancy Test Study, among other things, Church & Dwight had a reasonable expectation of obtaining an economic benefit and advantage from the 2009 *Consumer Reports* Pregnancy Test Study, including a reasonable expectation of increased goodwill, market share, shelf space, and sales of the First Response pregnancy tests.

Church & Dwight's expectation of prospective economic benefits is not hypothetical, but rather anchored in the unalterable fact that Church & Dwight obtained distinct and tangible economic benefits from the 2003 *Consumer Reports* study.  (Compl. ¶ 21.)  As is set forth in the

---

[1] Conspicuously, although SPD went outside the pleadings to assert falsely that Church & Dwight commissioned the 2009 *Consumer Reports* study, it nowhere denies the core allegations that false

Complaint, similar to the 2009 *Consumer Reports* study, the 2003 *Consumer Reports* study made a number of specific scientific findings favorable to Church & Dwight and recommended Church & Dwight's First Response pregnancy tests to the consuming public.  (Compl. ¶¶ 19, 21.)  Because the 2003 *Consumer Reports* study resulted in increased sales, goodwill, market share, and shelf space for the First Response pregnancy tests, Church & Dwight reasonably expected that the 2009 Consumer Reports study would provide the same economic benefit.  (*Id*. ¶21.)

Indeed, and entirely apart from Church & Dwight's own historical experience, the simple fact is that *Consumer Reports* has over 8 million individual subscribers.  It is therefore completely reasonable (indeed, it is a matter of common sense) for Church & Dwight to expect that a favorable recommendation by *Consumer Reports* – a publication read by consumers for its recommendations on what products to buy – would lead to a boost in First Response's sales, shelf space, overall goodwill and reputation.  *See Iqbal*, 129 S.Ct. at 1950 ("Determining whether a complaint states a plausible claim for relief . . . requires the reviewing court to draw on its judicial experience and common sense."); *Shinn v. Champion Mortgage Co., Inc.*, 2010 WL 500410, at *3 (D.N.J. Feb. 5, 2010) ("[T]he common sense and judicial experience of this Court . . . finds that Plaintiffs have sufficiently stated a claim.").

SPD's contention that the Complaint must identify a specific customer relationship in order for Church & Dwight to state a claim for tortious interference is incorrect.  In *Slim CD, Inc. v. Heartland Payment Sys., Inc.*, 2007 WL 2459349, at *4 (D.N.J. Aug. 24, 2007) (Wolfson, J.) (unpublished), this Court held that "although earlier cases in this district required plaintiffs to plead with sufficient specificity the prospective economic advantage with which a defendant allegedly interfered, recent cases have not required such specificity."  In *Slim CD*, plaintiff, a software

---

representations about Dr. Cole were made to Consumers Union to deter it from publishing the study.

developer, sued defendant under five causes of action arising out of defendant's alleged failure to accept plaintiff's software and pay monies due under a contract between the parties. *Id.* at 1. Plaintiff asserted a claim for tortious interference with prospective economic advantage, alleging that defendant's failure to accept plaintiff's software and satisfy other provisions of the contract interfered with the potential sale of all or part of plaintiff's business to a successor or potential acquirer. *Id.* at *4. Defendant moved to dismiss the tortious interference count on the ground that plaintiff did not identify a specific potential purchaser or acquirer of its business. *Id.* at *4. This Court denied defendant's motion, holding that "although Defendant is correct that Plaintiff has not identified the potential purchaser or acquirer of [plaintiff] with whose purchase [defendant] allegedly interfered, in light of the recent case law in this District suggesting that such specificity is not necessary, the Court will not dismiss" plaintiff's claim for tortious interference with prospective economic advantage. *Id.* at *4.

Similarly, in *Graco, Inc. v. PMC Global, Inc.*, 2009 WL 904010, at *32 (D.N.J. March 31, 2009) (Wolfson, J.) (unpublished), this Court found an expectation of future sales to unnamed existing and prospective customers sufficient to state a claim for tortious interference with prospective economic advantage. In *Graco*, the defendant counterclaimed for tortious interference with prospective economic advantage against plaintiff, a competitor, alleging that plaintiff made false and disparaging comments about defendant's business and that plaintiff refused to engage in business with any distributors carrying defendant's products. *Id.* Defendant argued that plaintiff's wrongful conduct interfered with defendant's "reasonable expectation to continue its sales of [defendant's] products to its existing customers and distributors, *and to sell its products to other members of the trade*." *Id.* (emphasis added). This Court found defendant's allegations sufficient and denied plaintiff's motion to dismiss. *Id; see also Teva Pharm. Indus., Ltd. v. Apotex, Inc.*, 2008 WL 3413862, at *9 (D.N.J. Aug. 8, 2008) (Brown, J.) (unpublished) (holding that "Rule 8(a) does

not require a party to identify a specific prospective customer or contract" when counterclaimant alleged lost business from unspecified suppliers of raw materials due to plaintiff's alleged tortious interference); *Floorgraphics, Inc. v. News Am. Mktg. In-Store Serv., Inc.*, 2006 WL 2846268, at *6 (D.N.J. Sept. 29, 2006) (unpublished) (holding that plaintiff need not "identify specific lost business opportunities" in alleging that defendant, *inter alia*, disseminated false and misleading information about plaintiff to its existing and prospective customers), *on recons. by* 2008 WL 1901107 (D.N.J. Apr. 24, 2008) (unpublished); *Syncsort Inc. v. Innovative Routines Int'l, Inc.*, 2005 WL 1076043, at *12 (D.N.J. May 6, 2005) (specific identification of prospective customers is unnecessary under the notice pleading standard); *Am. Health Sys. v. Visiting Nurse Assoc. of Greater Philadelphia*, 1994 WL 314313, at *14 (E.D. Pa. June 29, 1994) (denying motion to dismiss tortious interference claim based on health care equipment service's loss of business to prospective home care patients in the general public); *Printing Mart-Morristown v. Sharp Elec. Corp.*, 116 N.J. 739, 755 (N.J. 1989) (prospective economic relations are broadly defined under New Jersey tort law to include "any other relations leading to potentially profitable contracts") (quoting the Restatement (Second) of Torts § 766B)); *Di Cristofaro v. Laurel Grove Mem. Park*, 43 N.J. Super. 244, 247-48 (N.J. Sup. Ct. App. Div. 1957) (denying motion to dismiss tortious interference claim where plaintiff alleged that the defendant's conduct prevented plaintiff from selling its products to the general public).

Ignoring this precedent, including this Court's holdings in *Slim CD* and *Graco*, SPD argues that *Eli Lilly and Co. v. Roussel Corp.*, 23 F. Supp. 2d 460 (D.N.J. 1998), precludes a party from bringing a claim for tortious interference absent an identification of a specific prospective customer. SPD's reliance on *Lilly* is misplaced. To begin with, as stated by this Court in *Slim CD*, "although earlier cases in this district required plaintiffs to plead with sufficient specificity the prospective economic advantage with which a defendant allegedly interfered, *recent cases have not required such specificity*." *Slim CD,* 2007 WL 2459349, at *4 (emphasis added.) Thus, to the extent that

SPD is reading *Lilly* to require Church & Dwight to identify specific distributors, retailers and customers, *Slim CD* and recent precedent make clear that such specificity is no longer required.[2]  In any event, the holding in *Lilly* is inapposite to the facts of the present case. In *Lilly*, the plaintiff, the sole producer and manufacturer of a prescription drug, brought a claim of tortious interference based on defendant's sale of a competing product that plaintiff alleged was mislabeled and approved as a result of fraudulent statements to the FDA.  In other words, the claim was not based on allegations that defendant had tortiously interfered with plaintiff's ability to market its own product, but rather that defendant had improperly entered the marketplace as a competitor.  The court found that plaintiff's "stand alone" claim of loss of economic advantage failed to state a claim for tortious interference.  *Lilly*, 23 F. Supp. 2d at 103-104 ("Thus, 'the claimed loss of . . . unknown customers cannot, *standing alone*, state a claim for tortious interference with prospective business relations.'") (emphasis added) (*quoting Advanced Power Sys., Inc. v. Hi-Tech Sys., Inc.*, 801 F. Supp. 1450 (E.D. Pa. 1992)).  In contrast to the allegations in *Lilly,* this case involves wrongful acts by SPD that were intended to and directly interfered with Church & Dwight's ability to market its First Response product (as opposed to SPD introducing a competing mislabeled product on the market) and to prevent Church & Dwight from receiving receive the same economic advantage and benefit that Church & Dwight had received from a prior Consumers Union publication.  As explained above, Church & Dwight has specifically alleged the factual underpinnings for its reasonable expectation of economic advantage – *e.g.*, an actual increase in sales and positive market impact from a similar publication by Consumers Union in 2003, as well as Consumers Unions'

---

[2] In its brief, SPD avers that "C&D's relationship is with dealers and distributors, not consumers." (SPD Br. at 8, n.5.)  This is not a serious argument.  As hardly needs stating, sales to distributors and retailers are directly affected by consumer demand for products.  That being the case, by depriving Church & Dwight of the increased consumer demand for its products that would have resulted from the publication of the Consumers Union recommendation, SPD did indeed interfere with Church & Dwight's economic advantage from distributors and retailers.

subscribership of over 8 million individuals who read its publications for the very purpose of relying on Consumers Union's product recommendations.[3]

### 2. The Complaint Sufficiently Pleads That SPD Knew Of Church & Dwight's Expectation Of Economic Benefit Or Advantage

SPD's sole basis for arguing that the Complaint does not allege that it knew of Church & Dwight's expectation of economic advantage is as follows: "[h]aving failed to identify a protectable economic interest, C&D necessarily also failed to allege the second element of this tortious interference claim . . .)  (SPD Br. at 9.)  Because, as set forth above, the Complaint more than sufficiently pleads a reasonable expectation of economic advantage, SPD's derivative argument must fail.

---

[3] The other cases SPD cites on pages 7 and 8 of its brief are inapposite because they apply substantively different legal standards from other jurisdictions, involve distinguishable facts or both. *See Alvord-Polk, Inc. v. F. Schumacher & Co.*, 37 F.3d 996, 1015 (3d Cir. 1994) (explaining that, under Pennsylvania law, plaintiff must prove "the *existence* of prospective contracts" (as opposed to reasonable expectation of benefit standard applicable under New Jersey law)(emphasis added), *cert. denied*, 514 U.S. 1063 (1995); *Fineman v. Armstrong World Indus., Inc.*, 980 F.2d 171, 195 (3d Cir. 1992) (affirming dismissal at trial of claim for tortious interference by plaintiff, a consultant, where the record "was devoid of objective evidence that" plaintiff had "any concrete plans for future consulting work"), *cert. denied*, 507 U.S. 921 (1993); *Garshman v. Universal Res. Holding Inc.*, 824 F.2d 223, 233 (3d Cir. 1987) (affirming dismissal of tortious interference crossclaim under New York law where "nowhere in the crossclaim" did cross-claimant "allege what prospective economic advantage would have materialized but for [crossclaim defendant's] actions"); *Advanced Power Sys.  Inc. v. Hi-Tech Sys., Inc.*, 801 F. Supp. 1450, 1459 (E.D. Pa. 1992) (finding allegation that defendant destroyed plaintiff's "competitive advantage" by misappropriating trade secrets to be insufficient to support tortious interference claim; "claimed loss of competitiveness . . . standing alone" was not sufficient to state tortious interference claim); *Burns Jackson Miller Summit & Spitzer v. Lindner*, 452 N.Y.S. 2d 80, 83, 93 (N.Y. App. Div. 1982) (dismissing tortious interference claim under New York law where allegations concerning relationships purportedly interfered with were "totally conclusory"; plaintiff merely alleged that, by striking, transit union members "'intentionally and maliciously interfered with the business of the plaintiff . . . .'"); *Roth v. Rhodes*, 25 Cal. App. 4th 530, 546 (Cal. Ct. App. 1994) (case decided under California law, which requires interference with *existing* business relationship (as opposed to reasonable expectation of benefit standard applicable under New Jersey law); plaintiff podiatrist alleged he was wrongfully denied ability to lease space in professional building but offered no basis for allegation that he would have received patient referrals had he been permitted to lease space); *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1164 (Cal. 2003) (also applying California law requirement that plaintiff allege an existing economic relationship and noting, in *dicta*, that tort does not apply to "speculative expectation[s]").

But even if SPD's argument were not fatally pinned to is first meritless challenge, it would fail of its own accord.  Paragraph 34 of the Complaint alleges:

> 34.     Upon information and belief, SPD knew of Church & Dwight's reasonable expectation of economic benefit and advantage resulting from the anticipated release of the 2009 *Consumer Reports* Pregnancy Test Study.

The Complaint further alleges that: SPD knew that *Consumer Reports* published the 2003 Study that recommended Church & Dwight's First Response pregnancy tests to the public over the ClearBlue Easy tests now sold by SPD (*Id.* ¶¶ 19-20); SPD knew that the 2003 Study had a positive impact on the sales of First Response (*Id.*); SPD knew that Consumers Union intended to publish the results of the 2009 study which, like the 2003 Study, are favorable to Church & Dwight (*Id.* ¶¶ 26, 27); and that SPD made false and misleading representations to Consumers Union concerning the 2009 study in order to prevent Consumers Union from publishing a report of the 2009 study because SPD knew that, like the 2003 Study, a report of the 2009 study would have provided Church & Dwight with an economic advantage and benefit.  (*Id.* ¶ 29.)  *See, e.g., Prima v. Darden Rest., Inc.*, 78 F. Supp. 2d 337, 354-55 (D.N.J. 2000) (denying motion for judgment on the pleadings against plaintiff's tortious interference with prospective economic advantage claim in part because the defendants did nothing more than label plaintiff's claim as "illogical").

At a minimum, the above factual contentions of the Complaint allow the Court to draw the reasonable inference that SPD knew of Church & Dwight's expectation of economic advantage at the time it made its false and misleading misrepresentations to Consumers Union.  *See Iqbal*, 129 S.Ct. at 1949.  Indeed, it is precisely because SPD expected Church & Dwight to receive an economic advantage from Consumers Union's publication of the report of the 2009 study that it lied to Consumers Union to prevent the publication of that report.

16

**3.    The Complaint Sufficiently Pleads SPD's Wrongful, Intentional Interference With Church & Dwight's Expectation Of Economic Benefit**

The false and misleading representations made by SPD are stated in Paragraph 29 of the

Complaint:

> 29.    Upon information and belief, in or about 2009, in order to prevent Consumers Union from publishing a study that would be favorable to Church & Dwight, SPD made false and misleading representations to Consumers Union concerning Dr. Cole and the integrity, accuracy, and reliability of 2009 *Consumer Reports* Pregnancy Test Study, including falsely representing to Consumers Union that Dr. Cole was "dishonest" and that the results of the 2009 *Consumer Reports* Pregnancy Test Study were also "dishonest," flawed, and meaningless.

Paragraph 35 of the Complaint then alleges:

> 35.    Upon information and belief, SPD wrongfully and intentionally interfered with Church & Dwight's expectation of economic benefit and advantage through its false and misleading representations to Consumers Union concerning Dr. Cole and the 2009 *Consumer Reports* Pregnancy Test Study.

Conduct is wrongful when it is "offensive to legitimate interests of competition among fair

persons similarly situated." *Cushman & Wakefield of N.J. v. Alexander Summer Co.*, 295 N.J.

Super. 173, 181-82 (N.J. Sup. Ct. App. Div. 1996).  Wrongful conduct "includes violence, fraud,

intimidation, *misrepresentation*, criminal or civil threats, and/or violations of the law." *EZ Sockets,

Inc. v. Brighton-Best Socket Screw Mfg. Inc.*, 307 N.J. Super. 546, 559 (N.J. Super. Ct. Ch. Div.

1996) (emphasis added).  Ultimately, a court must determine, on a case-by-case basis, whether the

defendant's conduct was "'sanctioned by the rules of the game.'" *Printing Mart*, 116 N.J. at 756-57

(citations omitted).

Not only does the Complaint specifically set forth SPD's false and misleading statements

that constitute the intentional wrongful interference (Compl. ¶ 29), it also alleges that SPD made

these false and misleading statements to Consumers Union for the very purpose of preventing the

publication of study results favorable to Church & Dwight's products (Compl. ¶¶ 28-31), and that

SPD's misrepresentations to Consumers Union are part of a pattern of wrongful misconduct

17

directed towards Church & Dwight. (*Id*. ¶ 9.) There is no doubt that such conduct is wrongful and was intended to harm Church & Dwight. At the barest minimum, these allegations allow the Court to draw that reasonable inference, which is all that is necessary at this stage. *See Iqbal*, 129 S.Ct. at 1949.

SPD's argument that the Complaint fails to allege that SPD knew the results of the 2009 *Consumer Reports* study when it made its misrepresentations is irrelevant and in any case belied by the factual allegations of the Complaint. A claim for tortious interference with prospective economic advantage does not require that Church & Dwight prove that SPD actually knew the results of the 2009 study. For example, even if SPD lied to Consumers Union to prevent the publication of study simply because it feared or suspected that the results of the study would be favorable to Church & Dwight, such intentional conduct is "offensive to legitimate interests of competition among fair persons similarly situated" and therefore wrongful. *See*, *e.g.*, *Cushman*, 295 N.J. Super. at 181-82.

In any event, the Complaint does indeed sufficiently plead facts showing that SPD knew the results of the 2009 study. In particular, the Complaint expressly states that SPD was aware that Consumers Union intended to publish the results of the 2009 study and that SPD interfered with *Consumer Reports* "in order to prevent Consumers Union from publishing a study that would be favorable to Church & Dwight." (Compl. ¶¶ 28, 29.) (Conspicuously, SPD does not dispute any of these allegations.) Indeed, the conclusion is inescapable that SPD engaged in this conduct precisely because it knew (or feared) that the results were favorable to Church & Dwight and did not want Church & Dwight to obtain the economic advantage that it previously received from the 2003 Consumers Union report.

Similarly meritless is SPD's contention that the Complaint does not plead facts sufficient to show that SPD knew that the statements it made about Dr. Cole and the validity of the 2009 study

were false.  The Complaint alleges that in mid-2008 SPD *through its then Chief Executive Officer sought to retain Dr. Cole, a highly credentialed scientist, as its own consultant.*  (Compl. ¶ 25.)  The inescapable conclusion from SPD having tried to retain Dr. Cole as a consultant shortly before it disparaged him is that SPD knew that its comments concerning his integrity and honesty were false.  (*Id.* ¶¶ 25, 29.)  *See Iqbal*, 129 S.Ct. at 1949;  *Kost v. Kosakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993) (noting that a complaint may "'permit inferences to be drawn that . . . elements exist'"); *Syncsort*, 2005 WL 1076043, at *1 (stating that a complaint including a claim for tortious interference with prospective economic advantage "must set forth sufficient information to outline the elements of [the] claims or to permit inferences to be drawn that these elements exist"); *Printing Mart*, 116 N.J. at 756 (same).  Moreover, in 2009, at or about the very same time that SPD told Consumers Union that Dr. Cole is "dishonest," its own scientists published an article citing to the work of Dr. Cole.[4]  To this day, SPD continues to cite to Dr. Cole's publications on its website to explain how its pregnancy tests work.[5]  Any assertion that SPD did not know that its statements concerning Dr. Cole were false or misleading is not only contrary to the factual contentions of the Complaint, but belied by its own public conduct.

> **4.**     **The Complaint Sufficiently Pleads That In The Absence Of SPD's Interference, There Was A Reasonable Probability That Church & Dwight Would Have Received The Anticipated Economic Benefit From The 2009 *Consumer Reports* Study**

Paragraphs 36 and 37 of the Complaint allege:

36.     But for SPD's wrongful conduct, as aforestated, Church & Dwight would have realized the economic benefit and advantage of, *inter alia*, increased goodwill,

---

[4] *See* Sara R. Johnson et al., *Levels of Urinary Human Chorionic Gonadotrophin (hCG) Following Conception and Variability of Menstrual Cycle Length in a Cohort of Women Attempting to Conceive*, Current Medical Research and Opinion, vol. 25, no. 3 (2009).  (Vinti Dec. Ex. C.) Pursuant to Rule 201(b)(2) of the Federal Rules of Evidence, Church & Dwight respectfully requests that the Court take judicial notice of this document.

[5] *See* www.clearblue.com/uk/HCP/mechanism.php and www.clearblue.com/uk/HCP/faq.php. (Vinti Dec. Ex. D.)

market presence, shelf space, and sales of the First Response pregnancy tests.

37.    As a direct and proximate result of SPD's tortious and illegal conduct with respect to Consumers Union and the 2009 *Consumer Reports* Pregnancy Test Study, Church & Dwight was injured by losing the increased goodwill, market share, shelf space, and sales of the First Response pregnancy tests that would have resulted from the publication of the 2009 *Consumer Reports* Pregnancy Test Study.

As alleged in the Complaint, Consumers Union did not publish the report of the 2009 study as a direct result of SPD's false and misleading statements concerning Dr. Cole and the 2009 study. (Compl. ¶ 31.) This resulted in a loss of increased sales, goodwill, market presence, and shelf space for the First Response pregnancy test that Church & Dwight would have received had SPD not interfered with the publication. (*Id.* 37.) The Complaint makes clear the "probability" that Church & Dwight would have received an economic benefit that is far from being speculative or unreasonable, based on the increased sales and positive market impact that *actually resulted* from the 2003 *Consumer Reports* study. (*Id.* ¶ 21.) As noted above, apart from that concrete, historical reality, because Consumers Union enjoys a subscribership of over 8 million people and is the preeminent consumer products evaluator, whose recommendations have a major impact on the public's purchasing decisions, there is a virtual certainty that a positive report would confer an economic benefit. (*Id.* ¶¶ 18, 21.)

That SPD may disagree with these factual contentions – facts, which for purposes of SPD's motion to dismiss, must be accepted as true and construed in the light most favorable to the Church & Dwight – does not make them speculative and cannot give rise to a dismissal on the pleadings. *S. Camden Citizens*, 254 F. Supp. 2d at 499; *In re Burlington Coat Factory*, 114 F.3d at 1420-21.

Nor does the fact that it was Consumers Union, rather than SPD, that canceled the publication of the 2009 study report insulate SPD from a claim of tortious interference. The very purpose of a claim for intentional interference with prospective economic advantage is to provide an avenue of relief against the party whose actions ultimately prevented the claimant from acquiring

prospective relations.  Hiding behind what SPD labels as "intervening causes" (*i.e.*, that it was Consumers Union's decision not to publish the report of the 2009 study), cannot insulate SPD from responsibility for the events it set in motion when it made misrepresentations to Consumers Union. *See*, *e.g.*, *Central Paper Distrib. Serv.*, 325 N.J. Super. 225, 233 (N.J. Super. Ct. App. Div. 1999) ("[I]nterference with prospective economic advantage may also be established by showing conduct not necessarily directed at the third party, but which improperly impinged upon the claimant's reasonably expected economic advantage from or with regard to that third party."), *cert. denied*, 163 N.J. 74 (N.J. 2000).

**B.      The Complaint States A Claim Under New Jersey's Consumer Fraud Act**

**1.      SPD's Own Pleadings Before This Court Belie Its Assertion That Church & Dwight Has No Standing Under The CFA**

In its brief, SPD repeatedly asserts that Church & Dwight has no standing under the CFA because Church & Dwight is not a consumer of pregnancy tests:

> With respect to the CFA claim, C&D has no standing; that statute protects consumers, not market participants.  (SPD Br. at 1)

> The CFA is *consumer* protection legislation.  It does not entitle C&D, a competitor in the marketplace, to protect its market.  (SPD Br. at 11 (emphasis in original))

> Plaintiff is not a consumer, and has no standing under the CFA.  (SPD Br. at 12)

That SPD makes these assertions to the Court is remarkable given that in a related case, *Church & Dwight Co., Inc. v. SPD Swiss Precision Diagnostics GmbH*, Case No. 3:10-CV-00276 (FLW) (TJB) (which has since been consolidated for purposes of discovery), ***SPD itself asserted a claim under the CFA against Church & Dwight***.  (Vinti Dec. Ex. E (Defendant SPD Swiss Precision Diagnostics GmbH's Answer and Counter-Claim to Complaint for Declaratory Relief) at ¶¶ 49-52.)

If the law regarding competitor standing were really as SPD portrays it in its motion to dismiss (which is not the case), SPD could not have filed its Counterclaim against Church & Dwight in compliance with Rule 11.  Put succinctly, that SPD (a competitor of Church & Dwight) would assert a counterclaim under the CFA against Church & Dwight and then turn around days later and claim that Church & Dwight has no standing to bring suit against SPD under the CFA because Church & Dwight is a competitor of SPD, tells the Court everything it needs to know about the merits of SPD's motion to dismiss and its lack of candor to the Court.

### 2.   Church & Dwight Has Standing Under The CFA

The CFA confers standing to bring suit upon any person, including a corporation such as Church & Dwight, "who suffers any ascertainable loss of moneys . . . as a result of the use or employment by another person of any method, act, or practice declared unlawful."  N.J. Stat. Ann. §§ 56:8-1, 8-19 (2009).  None of the CFA's expansive provisions limit standing to consumers. [6]

Consistent with the language of the CFA, courts have stated that New Jersey's CFA does in fact confers standing on commercial competitors.[7]  *800-JR Cigar, Inc. v. GoTo.com, Inc.*, 437 F.

---

[6] It is also worth noting that, pursuant to N.J. Stat. Ann. § 56:8-20 (2009), Church & Dwight provided notice to the New Jersey Attorney General of its action under the NJCFA against SPD.  In her letter, the Attorney General did not indicate any objection to Church & Dwight's standing under the Act.  (Vinti Dec. Ex. E.)  Pursuant to Rule 201(b)(2) of the Federal Rules of Evidence, Church & Dwight respectfully requests that the Court take judicial notice of this document.

[7] Those cases that denied standing to competitors did so where the wrongful conduct was not directed at the competitor bringing suit.  *See, e.g.*, *IDT Telecom, Inc. v. CVT Prepaid Solutions, Inc.*, 2009 at WL 5205968, at *6 (D.N.J. Dec. 28, 2009) (unpublished) (alleging lost business resulting from false advertising to consumers); *Trans USA Prod., Inc. v. Howard Berger Co., Inc.*, 2008 WL 3154753, at *6 (D.N.J. Aug. 4, 2008) (unpublished) (alleging that defendant deceived consumers by including a counterfeit label on its product to signify that the product met industry standards); *Barr Lab. v. Bolar Pharm.*, 1992 U.S. Dist. LEXIS 22883, at *33 (D.N.J. 1992) (unpublished) (alleging that defendant fraudulently obtained FDA approval to market substandard generic drugs to consumers); *Specialty Ins. Agency v. Walter Kaye Assoc. Inc.*, 1989 WL 120752, at *5 (D.N.J. Oct. 2, 1989) (alleging that competing insurers failed to provide insureds and potential insureds with disclosures required by state insurance regulations).  The factual predicates of these cases stand in stark contrast to SPD's misrepresentations, which were made for the sole purpose of harming SPD's competitor, Church & Dwight.

Supp. 2d 273, 295-96 (D.N.J. 2006) (stating that "[c]onsumers and commercial competitors have

standing to bring claims under the NJCFA" in considering the parties' cross-motions for summary

judgment); *Felier v. N.J. Dental Assoc.*, 191 N.J. Super. 426, 431-32 (N.J. Super. Ct. 1983) (finding

that association had standing bring claim against defendant, because its members, who were

defendant's competitors, also had standing), *aff'd*, 199 N.J. Super. 363 (N.J. Super. Ct. App. Div.

1984), *cert. denied*, 99 N.J. 162 (N.J. 1984); *Riley v. New Rapids Carpet Center*, 61 N.J. 218, 225

(N.J. 1972) (discussing the CFA and noting that "[t]he reputable vendor, too, has a stake in the

suppression of dishonest competition.").[8]

     The cases (and law review article) relied on by SPD are inapposite because they did not

involve a claim under the CFA between competitors.  *See Del Tufo v. Nat'l Republican Senatorial

Comm.*, 248 N.J. Super. 684, 689 (Sup. Ct. N.J. 1991) (CFA did not apply to political fundraiser's

solicitations to potential donators); *City Check Cashing, Inc. v. Nat'l State Bank*, 244 N.J. Super.

304, 309 (N.J. Super. Ct. App. Div. 1990) (involving allegations under the CFA concerning check

cashing service and bank), *cert. denied*, 122 N.J. 389 (N.J. 1990); *Neveroski v. Blair*, 141 N.J.

Super. 365 (N.J. Super. Ct. App. Div. 1976) (involving allegations under the CFA concerning house

purchaser and real estate broker and vendors), *abrogated by Arroyo v. Arnold-Baker & Assoc., Inc.*,

206 N.J. Super. 294 (N.J. Super. Ct. 1985); Sharon Bossemeyer, *Re-Examining New Jersey's*

---

[8] *See also Conte Bros. Auto., Inc. v. Quaker State-Slick 50, Inc.*, 992 F. Supp. 709, 716 n.12 (D.N.J.
1998) (denying plaintiffs standing under the CFA when they were *neither competitors nor
consumers* of defendants), *aff'd*, 165 F.3d 221 (3d Cir. 1998); *Gen. Dev. Corp. v. Binstein*, 743 F.
Supp. 1115, 1130-31 (D.N.J. 1990) (dismissing plaintiff's CFA unfair competition claim due to lack
of standing, when plaintiff was not found to be a commercial competitor of defendant, because the
CFA does not extend "beyond consumers . . . *and competitors* in a commercial sense") (emphasis
added).

Other courts have also failed to raise any issue as to a competitor's standing to bring a claim under
the NJCFA.  *GlaxoSmithkline Consumer Healthcare, L.P. v. Merix Pharm. Corp.*, 2006 WL
1792856 (3d Cir. June 29, 2006) (affirming preliminary injunction when plaintiff brought false
advertising action against competitor under the Lanham Act and the NJCFA); *HPD Lab. v. Clorox*

*Consumer Fraud Act: Loopholes for Professionals?*, 7 Seton Hall Leg. J. 45 (1983) (focusing on the CFA's applicability to lawyers and doctors).

### 3. The Complaint Alleges Sufficient Facts To State A Plausible Claim Under The CFA

SPD argues that the factual allegations in the Complaint do not satisfy the requirement of a claim under the CFA because "there are no allegations of concealment, suppression or omission, nor are fraud or misrepresentation alleged with the particularity required by FRCP 9(b)." (SPD Br. at 12)  SPD is wrong.  First, assuming, *arguendo,* that the CFA requires allegations of fraud or misrepresentation to be alleged with particularity, the Complaint does so.  Second, SPD ignores that the CFA makes unlawful the "act, use or employment by any person of any *unconscionable commercial practice*, deception, fraud, false pretense, [or] misrepresentation . . . in connection with the sale or advertisement of any merchandise."  N.J. Stat. Ann. § 56:8-2 (2009) (emphasis added). At the very least, the allegations of the Complaint sufficiently plead an unconscionable commercial practice by SPD.  Indeed, SPD's lies to Consumers Union about the integrity and reliability of Dr. Cole and the 2009 *Consumer Reports* study epitomize the exact type of unconscionable conduct that falls within the ambit of the CFA.  *See Monarch Life Ins. Co. v. Senior*, 2006 WL 3825138, at *5 (D.N.J. Dec. 22, 2006) ("The standard of conduct contemplated by the unconscionability clause is 'good faith, honesty in fact and observance of fair dealing.'") (citation omitted).

Similarly meritless is SPD's legally unsupported, one-sentence, throw away argument that "[m]oreover, for the same reasons set forth above, there is no allegation of ascertainable loss, nor a causal relations between defendant's unlawful conduct and that loss." (SPD Br. at 12-13)  Contrary to SPD's assertion, the CFA explicitly states that unconscionable commercial practices are unlawful under the Act "whether or not any person has in fact been misled, deceived or damaged thereby."

---

*Co.*, 202 F.R.D. 410 (D.N.J. 2001) (granting motion to compel discovery when plaintiff brought action against competitor, including a claim under the CFA).

N.J. Stat. Ann. § 56:8-2 (2009); *State v. Hudson Furniture Co.*, 165 N.J. Super. 516, 520 (N.J. Sup. Ct. App. Div. 1979) ("N.J.S.A. 56:8-2 aims at commercial deception, whether or not the deceptive practice succeeded in harming the consumer.")  In any event, for the reasons set forth above, the Complaint sets forth the ascertainable loss of Church & Dwight's expected economic advantage (*e.g.*, increased sales, shelf space, goodwill, market presence, etc.) directly resulting from SPD's wrongful conduct.

In short, the Complaint states a plausible claim under the CFA.

**C.    In The Event That The Court Determines That The Allegations Of The Complaint Are Insufficient, Leave To Amend Should Be Granted**

As shown above, the Complaint more than meets the pleading standard.  But if the Court nonetheless concludes otherwise, Church & Dwight respectfully requests leave to amend.  Leave to amend is "freely given when justice so requires."  Fed. R. Civ. P. 15(a); *see Foman v. Davis*, 371 U.S. 178, 182 (1962).  Because of this, "[t]he Third Circuit has shown a strong liberality in allowing amendments under Rule 15 in order to ensure that claims will be decided on the merits rather than on technicalities."  *WHY ASAP, LLC v. Compact Power*, 461 F. Supp. 2d 308, 311 (D.N.J. 2006).

**CONCLUSION**

For the foregoing reasons, Church & Dwight respectfully requests that the Court deny SPD's motion in full.

Respectfully submitted,

CHURCH & DWIGHT CO., INC

By its attorneys,

s/ John P. Barry
John P. Barry
PROSKAUER ROSE LLP
One Newark Center, 18th Floor
Newark, New Jersey 07102
Tel. 973.274.6019

Richard M. Goldstein*
Michael T. Mervis*
Baldassare Vinti*
PROSKAUER ROSE LLP
1585 Broadway
New York, New York  10036-8299
* Admitted *pro hac vice*

Dated:  April 26, 2010