**\*NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

---
             )

CHURCH & DWIGHT CO., INC,    )     Civil Action No.: 10-453 (FLW)
             )
             )
       Plaintiff,    )         **OPINION**
v.              )
             )
SPD SWISS PRECISION DIAGNOSTICS, )
GMBH,            )
             )
       Defendant.    )
---

**WOLFSON, United States District Judge:**

In the present matter, Defendant SPD Swiss Precision Diagnostic, GmBH's ("Defendant" or "SPD") moves to dismiss Plaintiff Church & Dwight Co., Inc.'s ("Plaintiff" or "C&D") Complaint for failure to state a claim pursuant to *Fed. R. Civ. P.* 12(b)(6) and moves to strike portions of Plaintiff's Complaint pursuant to *Fed. R. Civ. P.* 12(f). C&D and SPD are business competitors in the pregnancy test market. In this case, Plaintiff alleges that SPD deprived C&D of its favorable publicity by persuading a consumer magazine, through allegedly false statements, to not publish favorable results of a study regarding C&D's pregnancy test. In that regard, Plaintiff asserts that SPD tortiously interfered with Plaintiff's prospective economic advantage and that SPD's conduct violated the New Jersey Consumer Fraud Act ("NJCFA" or the "Act"). The Court has considered the moving, opposition and reply papers for both motions, and for the reasons stated below, Defendant's motion to dismiss is denied with respect to

Plaintiff's claim of tortious interference, and granted with respect to Plaintiff's NJCFA claim; and Defendant's motion to strike is denied.

## Background

C&D markets and distributes, amongst other things, consumer pregnancy tests, including products sold under the First Response® brand. *See* Compl., ¶ 7.  SPD markets competing products.

In its Complaint, Plaintiff alleges that in 2008, Consumers Union, a nonprofit testing and information organization that evaluates and recommends consumer products to the public by way of its *Consumer Reports* magazine and website, informed Plaintiff that it would conduct a study ("the 2009 study") comparing the pregnancy tests distributed by Plaintiff, Defendant, and other companies.  *Id.* ¶¶ 18, 22.  Consumers Union had conducted a similar study in 2003 ("the 2003 study").  *Id.* ¶19.  The report of the 2003 study was published in the February 2003 issue of *Consumer Reports* and recommended Plaintiff's pregnancy test over all other pregnancy tests, including that of Defendant.  *Id.*  Plaintiff alleges that this recommendation led to a direct increase in sales of Plaintiff's pregnancy test, as well as increased goodwill, market share, and shelf space.  *Id.* ¶ 21.

Plaintiff further alleges that the 2009 study, conducted by Consumer Union, used test samples provided by Dr. Lawrence Cole, and again showed that Plaintiff's pregnancy test was more sensitive than any other consumer pregnancy test evaluated and tested, including Defendant's Clear Blue Easy pregnancy test.  *Id.* ¶ 25.  Consumers Union informed Plaintiff that it planned to publish the study online in May 2009 and in print in 2009.  *Id.* ¶ 22.  Plaintiff alleges that Defendant became aware of the fact that Consumers

Union planned to publish this study, and in an effort to prevent Consumers Union from publishing the results, made false and misleading representations to Consumers Union about the integrity of Dr. Cole and thus the integrity, accuracy, and reliability of the 2009 study. *Id.* ¶ 29. The Complaint alleges that these false and misleading statements caused Consumers Union to not publish the study. *Id.* ¶¶ 31. Accordingly, Plaintiff alleges that it was deprived of the prospective economic advantage associated with the publication of a favorable study in *Consumer Reports,* similar to the increased sales and positive market impact that C&D previously enjoyed from the publication of the 2003 study in *Consumer Reports.* *Id.* ¶ 31.

**Discussion**

**I.    Motion to Dismiss**

 **A.  Standard of Review**

The Federal Rules of Civil Procedure provide that a complaint "shall contain (1) a short and plain statement of the grounds upon which the court's jurisdiction depends ... (2) a short and plain statement of the claim showing that the pleader is entitled to relief, and (3) a demand for judgment for the relief the pleader seeks." Fed.R.Civ.P. 8(a). The purpose of a complaint is "to inform the opposing party and the court of the nature of the claims and defenses being asserted by the pleader and, in the case of an affirmative pleading, the relief being demanded." 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1182 (3d ed.2004).

In reviewing a motion to dismiss for failure to state a claim under 12(b)(6), a Court must take all allegations in the complaint as true, viewed in the light most favorable to the plaintiff "and determine whether, under any reasonable reading of the

3

complaint, the plaintiff may be entitled to relief." *Phillips v. County of Allegheny,* 515 F.3d 224, 233 (3d Cir. 2008) (citation and quotations omitted).  In *Bell Atlantic Corporation v. Twombly,* 550 U.S. 544 (2007), the Supreme Court "retired" the language in *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Twombly*, 550 U.S. at 561 (quoting *Conley,* 355 U.S. at 45-46).  Rather, the factual allegations in a complaint "must be enough to raise a right to relief above the speculative level." *Id.* at 555.  The Third Circuit summarized the pleading requirement post-*Twombly*:

> The Supreme Court's *Twombly* formulation of the pleading standard can be summed up thus: 'stating ... a claim requires a complaint with enough factual matter (taken as true) to suggest 'the required element.' This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of 'the necessary element.'

*Phillips,* 515 F.3d at 234 (quoting *Twombly,* 550 U.S. at 556).

In affirming that the *Twombly* standard applies to all motions to dismiss, the Supreme Court recently further clarified the 12(b)(6) standard.  "First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal,* 129 S.Ct. 1937, 1949 (2009). "Second, only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal,* 129 S.Ct. at 1950.  Accordingly, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.*  In short, "a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts." *Fowler v. UPMC Shadyside,* 578 F.3d 203, 211 (3d Cir. 2009).

4

The Third Circuit recently reiterated that "judging the sufficiency of a pleading is a context-dependent exercise" and "[s]ome claims require more factual explication than others to state a plausible claim for relief." *West Penn Allegheny Health System, Inc. v. UPMC*, --- F.3d ----, 2010 WL 4840093, *8 (3d Cir., Nov. 29, 2010). This means that, "[f]or example, it generally takes fewer factual allegations to state a claim for simple battery than to state a claim for antitrust conspiracy." *Id.* That said, the Rule 8 pleading standard is to be applied "with the same level of rigor in all civil actions." *Id.* at *7 (quoting *Ashcroft*, 129 S.Ct. at 1953).

### B.  Tortious Interference with Prospective Economic Benefit[1]

Count I of the Complaint asserts a state law claim for tortious interference with prospective economic advantage. To establish such a claim, Plaintiff must plead that: (1) it had a reasonable expectation of an economic benefit; (2) Defendant's knowledge of that expectancy; (3) Defendant's wrongful, intentional interference with that expectancy; (4) the reasonable probability that the claimant would have received the anticipated economic benefit, but for Defendant's interference; and (5) damages resulting from the defendant's interference. *Fineman v. Armstrong World Industries, Inc.,* 980 F.2d 171, 186 (3d Cir. 1992).

---

[1]    As a preliminary matter, this Court notes that while Defendant contends that Plaintiff's whole complaint is subject to dismissal under 12(b)(6) because every allegation is based on "information and belief," such is not the case. Allegations based on "information and belief" are sufficient to survive a 12(b)(6) motion when the truth of these allegations can reasonably be expected to be revealed in discovery. *See San Pellegrino S.P.A. v. Aggressive Partnership, Inc.*, Civ. Action No. 08-6016 (RBK/AMD), 2009 WL 2448504 at *4 (D.N.J. Aug. 10, 2009) (Plaintiffs' Complaint alleges that, upon information and belief [that a particular person was an officer of Defendant's company.] These allegations are sufficient to survive a 12(b)(6) motion [because] the alleged conduct can reasonably be expected to be revealed in discovery.") (citing *Twombly,* 550 U.S. at 555; *Phillips,* 515 F.3d at 231.). Accordingly, this Court will substantively examine the allegations.

For the following reasons, the Court finds that Plaintiff sufficiently pleads a claim for tortious interference with prospective economic benefit. Accordingly, Defendant's motion to dismiss as to this claim is denied.

### 1. Reasonable Expectation of Economic Benefit or Advantage

To establish the first prong, Plaintiff must allege facts "giving rise to some '*reasonable* expectation of economic advantage.'" *Printing Mart-Morristown v. Sharp Electronics Corp.*, 116 N.J. 739, 751 (1989) (quoting *Harris v. Perl*, 41 N.J. 455, 461 (1964)); *see also Med Alert Ambulance, Inc. v. Atlantic Health System, Inc.,* No. 04-1615, 2007 WL 2297335, at *16 (D.N.J. Aug. 16, 2007) (emphasis added). "Without searching far, courts have succeeded in finding a reasonable expectation of economic benefit." *Printing Mart*, 116 N.J. at 753. Courts easily find a reasonable expectation of economic benefit even where the sale is to the public at large. *Id.* at 751-53; *see Di Cristofaro v. Laurel Grove Memorial Park*, 43 N.J. Super. 244, 255-56 (App. Div. 1957) (the court found that an independent maker of cemetery markers had a reasonable expectation of selling monuments to the public, which had been interfered with by a grave-marker-fee requirement imposed by a cemetery); *see also Graco, Inc. v. PMC Global, Inc.*, No. 08-1304, 2009 WL 904010, at *32 (D.N.J. Mar. 31, 2009).[2]

For example, the court in *Teva Pharm. Indus., Ltd. v. Apotex, Inc.*, No. 07-5514, 2008 WL 3413862 (D.N.J. Aug. 8, 2008), found that the plaintiff's allegation that it "has

---

[2]   After an extensive research of case law, both state and federal, developed in the context of New Jersey's tortious interference claim, the Court finds that the federal decisions, which interpret and rely on New Jersey state court cases, are more factually analogous to the case at bar, and as such, the Court will refer to these decisions when addressing the parties' arguments.

a continuing, economically advantageous relationship for the supply of carvedilol for use in its carvedilol products" sufficient to establish a reasonable expectation of prospective economic benefit.  *Id.* at *27-29; *see Graco*, 2009 WL 904010 at *32 (Plaintiff "alleges a reasonable expectation of an economic benefit from selling products to customers in the trade with which [Defendant] intentionally and wrongfully interfered.").  In short, a complaint must demonstrate that the plaintiff was in "pursuit of business."  *Printing Mart,* 116 N.J. at 739; *see Ideal Dairy Farms, Inc. v. John Labatt, Ltd.*, 90 F.3d 737, 747 (3d Cir. 1996); *Med Alert,* 2007 WL 2297335 at *16.

Plaintiff satisfies the pleading requirement that it was "in pursuit of business," since it alleges that it actively markets and distributes its pregnancy tests. *See* Compl., ¶ 7;  *Ideal Dairy Farms*, 90 F.3d at 747.  Further, Plaintiff alleged that Consumers Union informed Plaintiff that it would be publishing the results of a study favorable to C&D in *Consumer Reports*, a magazine read by millions of consumers, and that Plaintiff received economic benefit from a similar study published several years earlier.  *See* Compl., ¶ 33. These allegations "call[] for enough facts to raise a reasonable expectation that discovery will reveal evidence of 'the necessary element,'" specifically, that Plaintiff did have a reasonable expectation of prospective economic gain. *Phillips,* 515 F.3d at 234 (quoting *Twombly,* 550 U.S. at 556).  This factor does not go to the "tortious" part of the analysis; rather, it merely asks whether the Plaintiff has alleged some reasonable expectation of economic benefit.  Because Plaintiff has alleged ongoing and expected sales to the public at large, it has sufficiently alleged a reasonable expectation of economic benefit.  *Printing Mart*, 116 N.J. at 753; *Graco, Inc.*, 2009 WL 904010 at *32.

Nevertheless, Defendant insists that a "plaintiff asserting a tortious interference claim must 'allege facts that, if true, would give rise to a reasonable probability that *particular* anticipated contracts would have been entered into.'"   *See* Defendant's Memorandum of Law in Support of its Motion to Dismiss at 7 (citing *Eli Lilly Co. v. Roussel*, 23 F. Supp 2d 460, 494 (D.N.J. 1998)) (emphasis in original).   However, a plaintiff does not need to allege specific prospective customers or contracts to show a reasonable expectation of prospective economic benefit.  *See Teva Pharm. Indus., Ltd.*, 2008 WL 3413862 at *9 ("Rule 8(a) does not require a party to identify a specific prospective customer or contract."); *Floorgraphics Inc., v. News America Marketing In-Store Services, Inc.*, No. 04-3500, 2006 WL 2846268, at *6 (D.N.J. Sept. 29, 2006) (holding that a plaintiff need not identify specific lost business opportunities in its pleading for tortious interference); *Syncsort Inc. v. Innovative Routines Int'l, Inc.,* Civ. Action No. 04-3623, 2005 WL 1076043, at *12 (D.N.J. May 6, 2005) ("Plaintiff would have the Court read these cases to require a pleading party to name a specific prospective customer or contract with which another party interfered. The Court is not convinced, however, that such specificity in pleading is required under the notice pleading standard.").   New Jersey recognizes that the tortious interference with prospective economic *benefit or advantage* cause of action is separate and distinct from tortious interference with an *existing contract*.  *Printing Mart*, 116 N.J. at 750; *Harris v. Perl*, 41 N.J. 455 (1964); *see Floorgraphics Inc.,* 2006 WL 2846268 at * 6.   Accordingly, as discussed above, rather than alleging the existence of a contractual relationship, Plaintiff must instead allege facts giving rise to some reasonable expectation of economic advantage, and Plaintiff has met this burden.

Defendant further clouds the inquiry into reasonable expectation of economic advantage by attempting to distinguish between existing customers and prospective customers; Defendant contends that a party only interferes with a reasonable expectation of prospective economic benefit if the alleged interference is directed at *existing customers*. Based on this reasoning, Defendant argues that because Plaintiff failed to allege that Defendant interfered with any existing customers the action must be dismissed. However, no such distinction exists. As discussed above, "Rule 8(a) does not require a party to identify a specific *prospective customer* or contract." *Teva Pharm. Indus.,* 2008 WL 3413862 at *9 (emphasis added).

This Court in *Graco* held, for example, that plaintiff there had sufficiently pled a tortuous interference claim by alleging that it had a "reasonable expectation to continue its sales of products to its existing customers and distributors, *and to sell its products to other members of the trade.*" *Graco,* 2009 WL 904010 at *32 (emphasis added). While SPD contends that the holding in *Graco* was specific to existing customers, this Court clearly held that plaintiff in *Graco* sufficiently pleaded "a reasonable expectation of an economic benefit from selling products to customers *in the trade* with which [Defendant] intentionally and wrongfully interfered." *Id.* (emphasis added). Likewise, in *Floorgraphics Inc.*, another case upon which Defendant relies to show this purported distinction between prospective and existing customers, the court held that Defendant's dissemination of "false, misleading, and malicious information about Plaintiff, to the Plaintiff's existing and *prospective clients*" was sufficient to establish a reasonable expectation of economic benefit or advantage. 2006 WL 2846268 at *1 (emphasis added). Accordingly, SPD's argument in this regard likewise fails.

Finally, Defendant argues that the relationship between C&D and Consumers Union is too speculative to give rise to a reasonable expectation of prospective economic benefit because C&D's relationship with Consumers Union is not an economic one and is too far removed from SPD's alleged "interference" to serve as a basis for liability.  In other words, Defendant posits that because Consumers Union is not a consumer that would be purchasing Plaintiff's products, no reasonable expectation of economic advantage can exist.  However, as discussed above, the focus is not on whether there is a *specific* economic relationship that has been interfered with; Plaintiff is only required to allege facts that give rise to *some* reasonable expectation of economic gain. *Graco,* 2009 WL 904010 at *32.  Prospective economic "relation" has been defined to include "any . . . relations leading to potentially profitable contracts." *Printing Mart*, 116 N.J. at 755 (quoting *Restatement (Second) of Torts* (1979)).   Accordingly, the mere fact that Consumers Union does not have an *economic* relationship with Plaintiff is not dispositive of the issue.   Instead, the relevant inquiry at this stage is whether C&D had *any* reasonable expectation of economic advantage, not whether it had a reasonable expectation of economic advantage specifically from Consumers Union.

Further, the distinction Defendant is making between a direct relationship with consumers and the relationship with Consumers Union, in this particular factual setting, is misplaced.  If interference with prospective economic advantage can be established by making disparaging remarks directly to consumers, as Defendant concedes, similarly under the broad definition of prospective economic gain, making disparaging remarks to a magazine, such as *Consumer Reports*, which has over 8 million subscribers, is sufficient to plead, at the this stage, tortious interference of potential economic

advantage.  Indeed, Plaintiff alleges that it benefited from Consumer Reports' 2003 study of Plaintiff's products.  Whether a publication actually does provide an economic advantage is a question of fact.  At this preliminary stage, Plaintiff has satisfied the pleading requirement for a reasonable expectation of economic advantage by alleging that Consumers Union was prepared to publish a study in *Consumer Reports* comparing competing products that would be favorable to Plaintiff, and could result in an economic benefit, and such expectation is reasonable because Plaintiff received economic benefit from a similar study published a few years earlier.

Accordingly, taking Plaintiff's allegations as true, this Court finds that Plaintiff sufficiently pleads a reasonable expectation of economic advantage.

### 2.   Defendant's Knowledge of Expectancy

Defendant's only argument as to this factor is that Plaintiff failed to sufficiently plead Defendant's knowledge of expectancy because Plaintiff failed to sufficiently plead a reasonable expectation of economic advantage.  As shown above, Plaintiff sufficiently pleads a reasonable expectation of economic benefit.  Indeed, Plaintiff's complaint alleges "SPD knew of [C&D's] reasonable expectation of economic benefit and advantage resulting from the anticipated release of the 2009 *Consumer Reports* Pregnancy Test Study." *See* Compl., ¶ 34.  Further, the Complaint alleges that SPD knew a similar study was published in 2003 and that the 2003 Study had a positive impact on the sales of C&D's pregnancy test.  *See Id.*, ¶ 26, 27.  Accordingly, Plaintiff has sufficiently pleaded this factor as well.

### 3.   Defendant's Wrongful, Intentional Interference with that Expectancy

The wrongful and intentional interference prong of the test requires Plaintiff to allege that the defendant acted with "malice." *Printing Mart*, 116 N.J. at 756; *see Pactiv Corp. v. Perk-Up, Inc.*, No. 08-05072, 2009 WL 2568105, at *12 (D.N.J. Aug. 18, 2009). Malice is not used in the literal sense requiring a showing of ill will toward the plaintiff. *Id*.  Instead, for the purposes of this prong, malice is defined as a harm that was inflicted intentionally and without justification or excuse.  *Id.*  The relevant inquiry is whether the defendant's conduct was sanctioned by the "rules of the game."  *Printing Mart*, 116 N.J. at 757.  In that regard, the New Jersey Supreme Court explained:

> In this area of the law the use of such expressions as conspire, unlawful, malicious, etc., has been criticized as beclouding judgment and clear thinking in the formulation of rules of liability. Yet a degree of generality in the criteria which will suffice to spell out liability in any given case of this kind is unavoidable. The essence of the cases in this field is that in adjudging whether what the defendant has done is actionable, i.e., not done in the exercise of an equal or superior right, the ultimate inquiry is whether the conduct was "both injurious and transgressive of generally accepted standards of common morality or of law." In other words, was the interference by defendant "sanctioned by the 'rules of the game.'" There can be no tighter test of liability in this area than that of the common conception of what is right and just dealing under the circumstances. Not only must [a] defendant[']s[] motive and purpose be proper but so also must be the means.

*Id.* (citations and quotations omitted).

Plaintiff's complaint alleges that Defendant

> wrongly and *intentionally* interfered with Church & Dwight's expectation of economic benefit and advantage through…its false and misleading representations to Consumers Union concerning Dr. Cole and the integrity, accuracy, and reliability of 2009 *Consumer Reports* Pregnancy Test study, including falsely representing to Consumers Union that Dr. Cole was 'dishonest' and that the results of the 2009 *Consumer Reports* Pregnancy Test Study were also 'dishonest,' flawed, and meaningless.

*See* Compl., ¶¶ 29, 35 (emphasis added).  The Complaint further alleges that SPD did this "in order to prevent Consumers Union from publishing a study that would be favorable to

Church & Dwight."  *Id.*   Accordingly, Plaintiff's complaint sets forth "enough factual matter (taken as true)…to raise a reasonable expectation that discovery will reveal evidence of the necessary element."  *Phillips,* 515 F.3d at 234 (citing *Twombly,* 550 U.S. at 556) (internal quotations omitted).  Whether or not Defendant did, in fact, act with "malice," is an issue of fact, not appropriately decided on a motion to dismiss.

Defendant argues that Plaintiff failed to allege that SPD *knew* that the statements it made about Dr. Cole and the validity of the study were false, and thus, Plaintiff failed to allege that SPD intentionally harmed C&D without justification or excuse.  *See* Defendant's Memorandum of Law in Support of its Motion to Dismiss at 10 (emphasis added).   However, this Court finds sufficient that Plaintiff alleges Defendant "*intentionally*…[made] false and misleading misrepresentations to Consumers Union concerning Dr. Cole and the 2009 *Consumer Reports* Pregnancy Test Study."  *See* Compl., ¶ 35.   Plaintiff also alleges that SPD made these false and misleading statements for the purpose of preventing the publication of the study, and that SPD's misrepresentations are part of a pattern of wrongful misconduct directed towards C&D. *See* Compl., ¶¶ 9, 28-31.  These allegations are enough to "raise a right to relief above the speculative level." *Id.* at 555.

Indeed, "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  *Twombly*, 550 U.S. at 561 (quoting *Conley,* 355 U.S. at 45-46).  Thus, even though Plaintiff did not explicitly allege that Defendant knew its statements about the study and about Dr. Cole were, in fact, false, Plaintiff has nonetheless set forth sufficient allegations to support the fact that it may be entitled to

13

relief.  The pleading standard of Rule 8 does not require "detailed factual allegations," *Iqbal*, 129 S.Ct. at 1949.  Rather, a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to *draw the reasonable inference that the defendant is liable* for the misconduct alleged."  *Iqbal*, 129 S.Ct. 1949 (emphasis added); *see also Syncsort Inc.*, 2005 WL 1076043 at *1 ("the court is required to accept as true all allegations in the pleading and *all reasonable inferences that can be drawn therefrom*, and to view them in the light most favorable to the non-moving party").  Based on this reasoning, Plaintiff has set forth sufficient facts such that, taking Plaintiff's allegations as true, this Court can draw the reasonable inference that Defendant knew about the falsity of its representations to Consumers Union.  Specifically, taking all of Plaintiff's facts as true, because Plaintiff alleged that Defendant "intentionally" misrepresented the results of the test and the reliability of Dr. Cole "in order to prevent Consumers Union from publishing a study that would be favorable to Church & Dwight," at this preliminary stage, this Court draws the reasonable inference that Defendant did so with the knowledge that these misrepresentations were false.

### 4. Reasonable Probability that the Claimant would have Received the Anticipated Economic Benefit in the Absence of Defendant's Interference

To establish this element at this preliminary stage, rather than alleging that the interference *caused* the breach or loss of the contract, the plaintiff must allege that but for the interference, there was a reasonable probability that the plaintiff would have received the anticipated economic benefit.  *Printing Mart*, 116 N.J. at 759-60; *Floorgraphics Inc.*, 2006 WL 2846268 at *6.  Plaintiff has met this burden as it alleged that Consumers Union "determined not to publish the 2009 *Consumer Reports* Pregnancy Test Study as a

14

result of SPD's false and misleading statements concerning Dr. Cole and the 2009 *Consumer Reports* Pregnancy Test Study." Compl., ¶ 31.  Further, Plaintiff alleged that it received an economic benefit from a similar study published several years earlier. Taking Plaintiff's facts as true, it can be inferred from this allegation that publication of another study to this effect would likewise draw economic benefit.

Defendant argues that Plaintiff has failed to plead a causal connection between Defendant's alleged interference and the reasonable probability that Plaintiff would have received the anticipated economic benefit because the decision by Consumers Union to not publish the study was an intervening cause, breaking the causal chain.  Defendant's argument is more appropriate on a motion for summary judgment or at trial.  Defendant is not contending in this context that Plaintiff has failed to plead a *reasonable* probability of economic benefit derived from the publication of the study had Defendant not interfered. Rather, Defendant offers another possible reason for this interference; namely, that Consumers Union may have chosen not to publish the study for other reasons.  Thus, Defendant is arguing that its alleged conduct did not cause the economic loss.  However, as discussed above, at the pleading stage the inquiry is whether Plaintiff has *alleged* that *but for* Defendant's interference, there was a *reasonable probability* of economic advantage, not that Defendant actually *caused* the loss of economic advantage.  Indeed, taking Plaintiff's facts as true, Plaintiff's allegations that Consumers Union would have published the study but for Defendant's interference, and that C&D garnered an economic benefit from the publication of a similar study, are sufficient to meet the pleading requirements.  Defendant's contention that Consumers Union's decision to not publish the study was based upon factors other than SPD's actions, and thus, was an

intervening factor, is a question of fact to be developed through discovery and not ripe for decision at the pleading stage.

### 5. Damages

Defendant does not contend that Plaintiff failed to sufficiently plead damages. Accordingly, this Court will not address this factor.

### B. New Jersey Consumer Fraud Act ("NJCFA")

Defendant contends that Plaintiff does not have standing to sue under the NJCFA. Specifically, Defendant argues that the NJCFA only confers standing for consumers and for business entities when they are equivalent to consumers in the marketplace and injured as consumers. Plaintiff argues that it has standing to sue because New Jersey courts have interpreted the NJCFA to confer standing on commercial competitors as well. For the reasons stated below, this Court finds that Plaintiff does not have standing under the NJCFA. Accordingly, Defendant's motion to dismiss the NJCFA claim is granted.

"[T]he [NJCFA] seeks to protect consumers who purchase 'goods or services generally sold to the public at large.'" *Cetel v. Kirwan Fin. Group, Inc.,* 460 F.3d 494, 514 (3d Cir. 2006) (quoting *Marascio v. Campanella,* 298 N.J. Super. 491, 499 (App. Div. 1997)). "'[T]he entire thrust of the Act is pointed to products and services sold to consumers in the popular sense.'" *Id.* (quoting *Arc Networks, Inc. v. Gold Phone Card Co.,* 333 N.J. Super. 587, 589 (Law Div. 2000)). "Thus, the CFA is not intended to cover every transaction that occurs in the marketplace…but, rather, [i]ts applicability is limited to consumer transactions which are defined both by the status of the parties and the nature of the transaction itself." *Id.* (internal citations omitted).

Historically, "consumer" has connoted an individual purchaser; however, the NJCFA has been "interpreted to afford protection to corporate and commercial entities *who purchase goods and services for use in their business operations*." *Prescription Counter v. Amerisource Bergan Corp.*, No. 04-5802, 2007 WL 3511301, at *14 (D.N.J. Nov. 14, 2007) (citation omitted) (emphasis added). Accordingly, "courts have held that it is the character of the transaction rather than the identity of the purchaser which determines if the [CFA] is applicable." *Elec. Mobility Corp. v. Bourns Sensors/Controls, Inc.,* 87 F. Supp. 2d 394, 400 (D.N.J. 2000) (citation omitted). Thus, the mere fact that C&D is a corporation does not preclude it from the protections afforded by the NJCFA, and the Court must look to the nature of the transaction to determine whether the Act applies. An example of a "consumer" relationship amongst business entities is when products and services are purchased for consumption or use in the course of business. *See, e.g., Naprano Iron & Metal Co. v. American Crane Corp.,* 79 F. Supp. 2d 494, 509 (D.N.J. 1999) (finding the purchase of a crane for use in construction covered by the NJCFA). These kinds of transactions amongst businesses are sufficient to establish standing under the NJCFA for the business entity that seeks to assert such a claim. *See Id.*

In this matter, the nature of the alleged actions of Plaintiff is not of the sort that the NJCFA covers. Indeed, Plaintiff does not allege that it engaged in a "consumer oriented" transaction with Defendant. Rather, Plaintiff advances a broader proposition that, as a commercial competitor, it has standing to bring claims under the NJCFA. In this regard, Plaintiff reads the statute broadly to confer standing not only to consumers and to businesses engaged in a "consumer oriented" transaction *but also* to competitors.

Plaintiff relies on a line of cases that seemingly support the position that commercial competitors should have standing to sue under the NJCFA.

In *Conte Bros. Automotive, Inc. v. Quaker State-Slick 50, Inc.,* 992 F. Supp. 709 (D.N.J. 1998), the court stated, in a footnote, that standing under the NJCFA could be conferred upon direct competitors.  Id. at 716 n. 12.  Similarly, in *800-JR Cigar, Inc. v. GoTo.com, Inc.*, 437 F. Supp. 2d 273, 295-96 (D.N.J. 2006), the court stated, without any analysis, that consumers and "commercial competitors" have standing to bring claims under the NJCFA.[3]  These decisions rely on a New Jersey Chancery Division case, *Feiler v. New Jersey Dental Ass'n*, 191 N.J. Super. 426, 430-31 (Ch. Div. 1983), which did not involve NJCFA claims.  Rather, it appears the plaintiff in *Feiler* brought a state law claim of unfair competition, and that court's analysis dealt with standing in that context.  *Id.* at 278-80.  As such, the Court is not persuaded by the authorities upon which Plaintiff rely.  *See Barr Labs, Inc. v. Bolar Pharm. Co.*, 1992 U.S. Dist. LEXIS 22883 (D.N.J. July 14, 1992).

While there are no New Jersey state court cases that directly address this issue, the Court finds persuasive recent district court cases that have rejected the notion that competitors, direct or otherwise, suffering non-consumer like injuries have standing to sue under the NJCFA.  In *Trans USA Products, Inc. v. Howard Berger Co., Inc.,* No. 07-5924, 2008 U.S. Dist. LEXIS 61069, at *20 (D.N.J. Aug. 4, 2008), the court explained:

> Plaintiff does not have standing to bring a cause of action under NJCFA. Plaintiff bases the NJCFA claim on allegations of unfair competition and Plaintiff's status as a competitor to Defendants. Importantly, Plaintiff is not a direct purchaser of the wiring

---

[3] However, while these two courts acknowledged competitor standing in *dicta*, neither court conferred standing to the plaintiffs under the particular facts of those cases.

18

> devices alleged to bear fraudulent UL marks and, has not used or diminished those goods. Plaintiff does not assert that it has been "victimized by being lured into a purchase through fraudulent, deceptive or other similar kind of selling or advertising practices." *Daaleman*, supra, 77 N.J. at 271. For those reasons, the Court finds that the NJCFA is not intended to protect competitors such as Plaintiff that do not suffer a consumer-like injury.

*Id.* at *20.

Likewise, the court in *IDT Telecom, Inc. v. CVT Prepaid Solutions, Inc.*, No. 07-1076, 2009 U.S. Dist. LEXIS 120355, at *19-20 (D.N.J. Dec. 28, 2009), having surveyed New Jersey state and federal decisions, commented that "no court [has] explicitly [held] that a competitor has standing to sue under the NJCFA . . . ." *Id.* at *19; *see also Barr Labs,* 1992 U.S. Dist. LEXIS 22883 at *32 ("[t]he [New Jersey] Consumer Fraud Act is plainly designed to protect consumers from misrepresentations to them in that capacity. It is not a vehicle for redressing competitive injury."); *see also Specialty Ins. Agency v. Walter Kaye Assoc., Inc.,* No. 89-1708, 1989 U.S. Dist. LEXIS 11842 (D.N.J. Oct. 2, 1989) (same).  As recent as this year, the court in *Holt's Co. v. Hoboken Cigars, LLC*, No. 09-3782, 2010 U.S. Dist. LEXIS 119423, at *5 (D.N.J. Nov. 10, 2010), agreeing with the conclusions of the foregoing courts, also held that a competitor does not have standing to state a claim under the NJCFA without alleging consumer-like injuries.[4]

Indeed, while New Jersey courts have construed the NJCFA statute broadly, Plaintiff has not cited any authority or advanced any reasoning to support a prediction that New Jersey's Supreme Court would extend the scope of the NJCFA to situations Plaintiff suggests.  Plainly, the NJCFA was enacted to protect consumers; although this

---

[4] Plaintiff attempts to factually distinguish these cases from this case; however, as indicated by this Court, these decisions held, generally, that competitors do not have standing to bring NJCFA claims unless they suffer consumer-like injuries.

protection has been extended to businesses acting as consumers, the NJCFA was not enacted to redress business disputes.  Here, because Plaintiff, a competitor of SPD, does not allege that it suffered any consumer oriented injuries, the Court finds that Plaintiff lacks standing to sue under the NJCFA.

## II. Motion to Strike

### A.  Standard of Review

Rule 12(f) of the Federal Rules of Civil Procedure permits a court to strike from a pleading "any redundant, immaterial, impertinent, or scandalous matter." *Fed. R. Civ. P.* 12(f); *see Geruschat v. Ernst Young LLP*, 505 F.3d 237, 248 n.9 (3d Cir. 2007).  "The purpose of a motion to strike is to simplify the pleadings and save time and expense by excising from a plaintiff's complaint any redundant, immaterial, impertinent, or scandalous matter which will not have any possible bearing on the outcome of the litigation."  *Garlanger v. Verbeke,* 223 F.Supp. 2d 596, 609 (D.N.J. 2002); *see Receivables Purchasing Company, Inc. v. Engineering and Professional Services, Inc.,* No. 09-1339, 2010 WL 3488135, at *2 (D.N.J. Aug. 30, 2010).  "[M]otions to strike are usually 'viewed with disfavor' and will generally 'be denied unless the allegations have *no possible relation* to the controversy and may cause prejudice to one of the parties, or if the allegations confuse the issues.'"  *Garlanger*, 223 F.Supp. 2d at 609 (citing *Tonka Corp. v. Rose Art Industries, Inc.*, 836 F. Supp. 200, 217 (D.N.J. 1993)) (emphasis added).  "Rule 12(f) should be construed strictly against striking portions of the pleading on grounds of immateriality and if the motion is granted at all, the complaint should be pruned with care." *Dicar, Inc. v. Stafford Corrugated Products, Inc.,* No. 05-5426, 2009

WL 1796053, at * 3 (D.N.J.2009) (quoting *Morgan Home Fashions, Inc. v. UTI, United States, Inc.,* No. 03-772, 2004 WL 1950370, at * 8 (D.N.J. Feb. 9, 2004)).

Thus, Rule 12(f) establishes a high bar for striking the portions of a pleading, as the "remedy will be granted only when the defect is plain, for where there is a *semblance* of a cause of action or defense set up in the pleading, its sufficiency cannot be determined on motion to strike it out." *Morgan Home Fashions, Inc.*, 2004 WL 1950370 at *8.

Defendant moves to strike paragraphs 10-17 of Plaintiff's Complaint, which outline a previous FTC charge against Inverness, Defendant's parent company, for illegally acting to stifle competition with Plaintiff. Defendant argues that the FTC allegations are irrelevant "background information" as Plaintiff fails to relate the FTC allegations to either of its claims. Moreover, Defendant claims that because Inverness is a third party, it that has nothing to do with Defendant's alleged wrongdoing. Plaintiff argues that the FTC allegations are relevant to show a pattern of wrongful conduct by SPD and its parent company Inverness "directed toward [C&D] for the purpose of inhibiting and impairing its ability to compete in the consumer pregnancy test market and otherwise causing it injury." Compl., ¶ 9.

Defendant's reasons are insufficient to overcome the high bar necessary to strike portions of the pleading. The Court finds that the FTC allegations are indeed relevant in showing a "pattern of wrongdoing." These allegations read in conjunction with the rest of the Complaint illustrate an alleged "pattern of wrongful conduct" by SPD and Inverness directed towards C&D. In that connection, the Complaint alleges that SPD's misrepresentations concerning the 2009 Study are a part of that scheme. *See Id.* at ¶¶ 8-10. In that respect, the allegedly wrongful conduct is relevant to C&D's tortious

interference claim; in that, the allegations, if true, would support Plaintiff's claim that SPD acted wrongfully and intentionally when it made misrepresentations to Consumers Union.  *See e.g., Zaloga v. Provident Life & Accident Ins. Co. of America*, 671 F.Supp. 2d 623, 633-34 (E.D. Pa. 2009) ("[a]lthough some of the allegations might be ultimately irrelevant to the disposition of this case, Plaintiff makes clear in the Complaint that such allegations are included to show a common design and scheme on the part of Defendants . . . .").

Equally unpersuasive is SPD's argument that because Inverness is a "third party," it has no relevance in this suit.  At the pleading stage, the Court is satisfied, for the reasons stated above, that Plaintiff's allegations -- Inverness and SPD have a closely intertwined relationship and that they have acted together in concert to perpetrate a scheme to damage C&D -- are sufficiently related to the claims asserted in the Complaint.  Accordingly, the Court finds that Defendant has not established that these allegations have no *possible* relation to the controversy.  *See, e.g., Lucarelli v. DVA Renal Healthcare, Inc.*, No. 08-0049, 2009 WL 262431, at *6 (S.D. Ohio Feb. 3, 2009) (where the Court denied Defendant's motion to strike the portion of the pleading that alleged Defendant's parent company was previously subject to a fraud investigation holding: "[a]t this point in the proceedings, the court cannot be certain whether or not the allegations are relevant to the claims made by the plaintiffs and therefore cannot consider the allegations…as so scandalous, redundant, impertinent or immaterial as to require that they be struck from the complaint.").

Defendant's argument that the FTC allegations should be stricken because they are inadmissible under Federal Rule of Evidence 404(b) is premature.  Neither the

complaint nor evidence of prior bad acts has been offered into evidence for any purpose. If and when Plaintiff attempts to offer evidence of the FTC allegations, Defendant can make its objection as to their admissibility, and admissibility will be determined based on the specific context in which it is being offered under the Federal Rule of Evidence 404(b).  *See, e.g.*, *Samra v. Johal*, No. 09-0171, 2010 WL 55856, at *1 (W.D. Wash. Jan. 5, 2010). ("Evidence of prior bad acts is relevant for purposes of Rule 12(f) even if it is not admissible under *Fed. R. Ev.* 404.").  Similarly, SPD's concern that the trier of fact would be prejudiced by the FTC allegations is unconvincing.  The proper remedy to avoid such prejudice is through a motion *in limine* after a discovery record has been made.  *See, e.g., Adams v. County Erie*, No. 07-316, 2009 WL 4016636, at *1 (W.D. Pa. Nov. 19, 2009).

Finally, Defendant contends that permitting discovery on this issue would be prejudicial.  This contention is likewise unconvincing.  During discovery, if Defendant has a legitimate argument that discovery sought by C&D is prejudicial or confidential, it will have mechanisms to curb potential prejudice, such as a protective order.  *See, e.g.*, *126th Ave. Landfill, Inc. v. Pinellas County,* No. 09-307, 2009 WL 1544030, at *3 (M.D. Fla. Jun. 3, 2009) ("The claim of prejudice related to potential unnecessary discovery may be addressed in a different manner and at an appropriate time."); *see also Thornton v. UL Enterprises*, No. 09-287, 2010 WL 1004998, at *3 (W.D. Pa. Mar. 16, 2010) (permitting potentially irrelevant portions of the pleading to stay in, pending discovery, and allowing the moving party to "renew his challenges…once discovery is complete and the record more fully developed.").  Importantly, Plaintiff noted that the information regarding the FTC allegations is a matter of public record.  Information that is already a

matter of public record reduces the potential for prejudice through discovery.  *See, e.g.*, *Lucarelli*, 2009 WL 262431 at *6 ("Moreover, as the information contained in paragraphs 9-11 is already a matter of public record, maintaining the information in the complaint does not unduly prejudice defendant.").  Thus, this Court does not find that Defendant will be unfairly prejudiced by the FTC allegations at this infancy stage of the litigation.

Accordingly, Defendant's motion to strike is denied.

## Conclusion

For the foregoing reasons, Defendant's Motion to Dismiss is denied as to Plaintiff's claim for tortious interference with prospective economic advantage and granted as to Plaintiff's claim under the NJCFA.  Further, Defendant's motion to strike is denied.


DATED:  December 16, 2010                           /s/        Freda L. Wolfson
                                                    Freda L. Wolfson, U.S.D.J.